[No. G015350. Fourth Dist., Div. Three. Apr. 3, 1996.]

MICHAEL DAVID ROBERTSON, Plaintiff and Respondent, v.
FRANK S. ZOLIN, as Director, etc., Defendant and Appellant.

148

**COUNSEL**

Daniel E. Lungren, Attorney General, Henry G. Ullerich, Assistant Attorney General, Martin H. Milas, Christine B. Mersten, Elizabeth Hong and Linda J. Vogel, Deputy Attorneys General, for Defendant and Appellant.

Barry T. Simons for Plaintiff and Respondent.

**OPINION**

**SONENSHINE, J.**—The Department of Motor Vehicles (DMV) appeals a judgment granting a petition for a writ of mandate ordering it to revoke its

suspension of Michael David Robertson's license for driving while intoxicated. We affirm.

I

On April 12, 1993, at 1:20 a.m., Irvine Police Officer J. M. Gunderson stopped Robertson for driving his truck "against a red light." Gunderson noticed Robertson's eyes were bloodshot and he smelled of alcohol beverages. After testing his coordination skills, Gunderson arrested Robertson and administered a breath test.

The first test was given at 2:19 a.m. and showed Robertson's blood-alcohol content (BAC) was .18 percent. However, the second test, given a minute later, registered ".XX." At 2:22 a.m., a third test was given, producing another reading of .18 percent. At that point, Gunderson confiscated Robertson's license and issued him a temporary driving permit.

At the administrative review hearing, the DMV submitted, inter alia, Gunderson's sworn statement, which included the breath test results. In turn, Robertson introduced a computer-generated document entitled "ADAMS Inquiry," reflecting various information about the tests. The document also contained a signed and dated handwritten notation which read, "OCSD-LAB regards results with .XX (Mouth Alc Flag) invalid tests. This test is *not* valid." (Original italics.) Despite this, the hearing officer ordered Robertson's license suspended for four months.

In his petition for mandamus relief, Robertson argued the ADAMS Inquiry notation undermined the presumed reliability of the test results. After taking the matter under submission, the trial court agreed: "Petitioner challenged the reliability of the blood alcohol test results. The burden then fell to the DMV to establish the validity of the test results in order to uphold the license suspension. The DMV chose to accept the [ADAMS Inquiry] printout into evidence and do nothing to refute Petitioner's contention. [¶] The writ is granted. Petitioner's driver's license to be reinstated."

II

The DMV argues the evidence was legally and factually insufficient to rebut the presumption of reliability attendant to the breath test results. We disagree.

*Burden of Proof*

The presumption of reliability is based on compliance with the administrative regulations governing alcohol testing procedures. (*Burge* v.

*Department of Motor Vehicles* (1992) 5 Cal.App.4th 384, 388-389 [7 Cal.Rptr.2d 5].) When, as here, the officer certifies 1) the test results were obtained in the regular course of his duties, 2) he is qualified to operate the testing equipment, and 3) the test was administered pursuant to the applicable regulations, we will presume the test results are sufficiently reliable to uphold the suspension. (*Ibid.*) But once the driver shows "that official standards were in any respect not observed, the burden shifts to the [DMV] to prove that the test was reliable despite the violation. [Citations.]" (*Davenport* v. *Department of Motor Vehicles* (1992) 6 Cal.App.4th 133, 144 [7 Cal.Rptr.2d 818]; see also *Coombs* v. *Pierce* (1991) 1 Cal.App.4th 568 [2 Cal.Rptr.2d 249].)

### Legal Limitations on the Use of Hearsay Evidence

■ Government Code section 11513, subdivision (c) states, "Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions." Since the ADAMS Inquiry notation is legally inadmissible hearsay, the DMV maintains it was insufficient, per se, to support the trial court's ruling.

Initially, we note Government Code section 11513, subdivision (c) serves as a check on the sufficiency of evidence to warrant a license suspension. (See *Daniels* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 532 [189 Cal.Rptr. 512, 658 P.2d 1313].) While the statute guards against administrative orders lacking evidence of rational probative force (*ibid.*), it does not expressly limit the manner in which a *licensee's* evidence may be considered. In any event, the ADAMS Inquiry notation was not the *only* evidence pertaining to the reliability issue. The DMV's own evidence set forth the manner of testing and results obtained. And while this evidence showed the second breath test was "invalid," it offered no explanation for this reading. On the other hand, the ADAMS Inquiry notation explained *why* the test was bad, i.e., the presence of mouth alcohol. Thus, the hearsay notation supplemented the DMV's evidence consistent with the restrictions set forth in Government Code section 11513, subdivision (c).

### Review of Trial Court's Factual Findings

The DMV alternatively contends the ADAMS Inquiry was pertinent only to the second, "invalid," breath test and did not affect the reliability of the first and third tests. The trial court's contrary interpretation of the record is supported by substantial evidence.

■ "The trial court's task . . . was to determine, using its independent judgment, whether the weight of the evidence supported the administrative

decision. . . . '[U]nder the independent judgment rule, the trial court must weigh the evidence and make its own determination as to whether the administrative findings are sustained.' . . . The trial court has the ' " 'ultimate power of decision . . . .' " ' [¶] Accordingly, on appeal, we . . . 'review the record to determine whether the trial court's findings are supported by substantial evidence. . . . ' . . . We must resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision. . . . Where the evidence supports more than one inference, we may not substitute our deductions for the trial court's. . . . We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings. . . . [¶] These rules of appellate review apply even where the evidence in the administrative record is undisputed, if that evidence is 'subject to conflicting inferences with respect to the crucial issue. In such a case the trial court, . . . may draw its own inferences from the evidence in the record, and if the inferences so drawn are supported by substantial evidence, they are binding on the reviewing court. . . .' " (*Yordamlis* v. *Zolin* (1992) 11 Cal.App.4th 655, 659-660 [14 Cal.Rptr.2d 225], citations omitted.)

■ There was much dispute below as to the meaning of the ADAMS Inquiry notation. Did it simply restate the obvious—that the second breath test was invalid, or did it cast doubt on the accuracy of all the tests? The trial court wrestled with the issue at length, observing the notation was "rather ambiguous." In the end though, it found the notation signaled the test results were sufficiently suspect to rebut the presumption of reliability. In this regard, we note, "The burden imposed upon the licensee of rebutting the presumption favoring the reliability of . . . alcohol tests does not entail the marshaling of complex scientific evidence. . . . [T]he licensee [need only] show[], through cross-examination of the officer or by the introduction of affirmative evidence, that official standards were in any respect not observed[.]" (*Davenport* v. *Department of Motor Vehicles*, *supra*, 6 Cal.App.4th at p. 144.)

As we have indicated, the primary significance of the ADAMS Inquiry notation lay not in its conclusions about the validity of the test results but in its explanation of mouth alcohol as the cause of the second test reading. The very form on which Officer Gunderson recorded the test results indicates the presence of mouth alcohol requires the officer to stop the test and recommence a 15-minute observation of the driver. (See generally, Cal. Code Regs. tit. 17, § 1219.3.) Yet, Gunderson obtained a third sample from Robertson immediately after the second one activated the mouth-alcohol flag. Gunderson also overlooked the form's directive that a third breath sample should be taken "only if 2 breath results do not agree with 0.02 %."

While these facts do not affirmatively establish the test results were unreliable, they constitute sufficient evidence to support the trial court's finding official testing standards were not observed. As the DMV offered no evidence indicating the test results were reliable despite this deviation, the trial court properly granted Robertson's petition for a writ of mandate.

At the same time, the facts were sufficiently close to warrant the DMV vigorously litigating the case in the public interest. We cannot say the DMV's action was "arbitrary or capricious" (Gov. Code, § 800) or its appeal frivolous (Code Civ. Proc., § 907) so as to justify an award of attorney fees in Robertson's favor.[1]

The judgment is affirmed. Robertson shall recover his costs on appeal.

Crosby, Acting P. J., and Rylaarsdam, J., concurred.

---

[1]The trial court impliedly rejected Robertson's request for attorney fees.