[No. D039757. Fourth Dist., Div. One. Jan. 31, 2003.]

JAIME CORDOVA MANRIQUEZ, Plaintiff and Respondent, v.
STEVEN GOURLEY, as Director, etc., Defendant and Appellant.

**COUNSEL**

Bill Lockyer, Attorney General, Dennis W. Dawson and Kathryn M. Megli, Deputy Attorneys General, for Defendant and Appellant.

John T. Burke for Plaintiff and Respondent.

**OPINION**

**O'ROURKE, J.**—The Department of Motor Vehicles (DMV) suspended Jaime Cordova Manriquez's driver's license for driving with 0.08 percent or

more of alcohol in his blood. (Veh. Code, § 13353.2.) An administrative hearing officer upheld the suspension, determining the arresting officer complied with state regulations requiring a 15-minute period of continuous observation before administering a breath test (Cal. Code Regs., tit. 17, § 1219.3, hereafter regulation 1219.3).[1] The trial court granted Manriquez's ensuing petition for writ of mandate on the ground the observation criterion was not satisfied. On appeal, the DMV contends (1) the trial court erred by concluding the officer's observation of Manriquez did not comply with the regulation; and (2) even if the officer did not comply, Manriquez did not establish the violation resulted in an inaccurate test result.

We conclude the trial court based its ruling on an incorrect interpretation of the regulation setting forth the continuous observation requirement and, as a result, erred by concluding Manriquez's evidence was sufficient to rebut the presumption the arresting officer properly performed the breath test. We therefore reverse the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

At 12:01 a.m. on August 18, 2001, California Highway Patrol (CHP) Officer Timothy Fenton stopped Manriquez after noticing his Plymouth weaving in the No. 3 lane of northbound Interstate 5. When he contacted Manriquez through the car's front passenger window, Officer Fenton observed indications of alcohol intoxication including bloodshot eyes and an odor of alcoholic beverage from the car's interior. Based on his administration of a series of field sobriety tests, the officer concluded Manriquez was under the influence of alcohol and at 12:17 a.m. arrested him for violation of Vehicle Code section 23152, subdivision (a).

Officer Fenton transported Manriquez to the San Diego County jail where Manriquez took a breath test that showed blood-alcohol level results of 0.11 at both 12:54 a.m. and 12:59 a.m. The officer issued an order suspending Manriquez's driver's license.

Manriquez sought an administrative hearing, at which the DMV offered, and the hearing officer admitted over hearsay objections, Officer Fenton's sworn statement in which he certified "under penalty of perjury under the laws of the State of California, that the above breath test sample results were

---

[1]Regulation 1219.3 provides: "A breath sample shall be expired breath which is essentially alveolar in composition. The quantity of the breath sample shall be established by direct volumetric measurement. The breath sample shall be collected only after the subject has been under continuous observation for at least fifteen minutes prior to collection of the breath sample, during which time the subject must not have ingested alcoholic beverages or other fluids, regurgitated, vomited, eaten or smoked."

obtained in the regular course of my duties" and he was "qualified to operate this equipment and that the test was administered pursuant to the requirements of Title 17 of the California Code of Regulations." The hearing officer also admitted, over the same objections, a precautionary checklist and results of the breath test, and Fenton's unsworn arrest/investigation report. At the hearing, Officer Fenton testified that about two minutes after he arrested Manriquez (approximately 12:19 a.m.), he placed him in the back of the patrol car, then called and waited for a tow truck. During that time, Officer Fenton remained in the patrol car, talking to Manriquez and doing paperwork. After Manriquez's car was released to the tow truck driver at 12:35 a.m., Officer Fenton drove Manriquez to the jail, where the breath test began at 12:51 a.m. According to Officer Fenton, before administering the test, he asked Manriquez if he had burped in the last 20 minutes; Manriquez responded he had not. The officer explained he conducted the required 15-minute observation period before the breath test while Manriquez was seated in his patrol car on the right side of the rear passenger seat; Officer Fenton talked to him and looked at him in his rearview mirror as he was driving to the jail. Officer Fenton testified Manriquez did not eat, drink, smoke or vomit while in the patrol car.

Manriquez presented the testimony of Ron Rockwell, a former deputy sheriff, who testified it was impossible for an officer driving a vehicle to continuously observe someone who was seated in the vehicle's backseat. Although Rockwell admitted he was not present at the scene and could not testify definitively whether Officer Fenton's observation satisfied state requirements, in Rockwell's opinion and experience, the right side of the backseat was the worst position for the 15-minute viewing period. Rockwell testified that if he had been responsible for complying with the 15-minute rule, he would have "k[ept] an eye" on Manriquez for an additional 15-minute period after his arrival at the jail. Manriquez did not testify.

The administrative hearing officer reimposed Manriquez's driver's license suspension. The hearing officer determined Officer Fenton had reasonable cause to believe Manriquez was driving a motor vehicle while under the influence of alcohol; that Manriquez was lawfully arrested for a violation of Vehicle Code section 23152; and he was driving a vehicle while he had 0.08 percent or more by weight of alcohol in his blood. In reaching these conclusions, the hearing officer noted the DMV's evidence contained a certification indicating the breath test was administered in compliance with title 17 of the California Code of Regulations, including the 15-minute observation rule. The hearing officer found Rockwell's testimony regarding the adequacy of Officer Fenton's 15-minute observation period was subjective, too speculative, and insufficient to rebut the statutory presumption of

duty regularly performed. (Evid. Code, § 664 ["It is presumed that official duty has been regularly performed"].)

Manriquez petitioned the superior court for a writ of administrative mandate. He argued the hearing officer erred when she found Officer Fenton complied with the 15-minute observation requirement, and that the official duty presumption was rebutted by Officer Fenton's testimony that he was driving the vehicle, which established it was "absolutely impossible" for him to have complied with the requirement. Manriquez argued that because the department did not meet its burden to establish the reliability of the breath test, the court was required to issue the writ of mandate and set aside the DMV's order suspending his driving privileges.

The trial court found it was impossible for Officer Fenton to have continuously observed Manriquez in compliance with regulation 1219.3 and concluded, as a result, Manriquez had rebutted the presumption of duty regularly performed. It granted a writ overturning the administrative decision to suspend Manriquez's driving privilege. The DMV appeals.

DISCUSSION

I. *Administrative Per Se Procedure and Standard of Appellate Review*

■ We begin with a brief overview of the burdens of proof in an administrative DMV hearing, which "does not require the full panoply of the Evidence Code provisions used in criminal and civil trials." (*Petricka v. Department of Motor Vehicles* (2001) 89 Cal.App.4th 1341, 1348 [107 Cal.Rptr.2d 909].) In this hearing, the DMV bears the burden of proving by a preponderance of the evidence certain facts, including that the driver was operating a vehicle with a blood-alcohol level of 0.08 percent or higher. (Veh. Code, §§ 13557, subd. (b)(2)(C)(i), 13558, subd. (c)(2); *Lake v. Reed* (1997) 16 Cal.4th 448, 456, 463 [65 Cal.Rptr.2d 860, 940 P.2d 311]; *Petricka v. Department of Motor Vehicles*, at p. 1348, citing *Santos v. Department of Motor Vehicles* (1992) 5 Cal.App.4th 537, 549 [7 Cal.Rptr.2d 10].) The DMV may satisfy its burden via the presumption of Evidence Code section 664. (*Petricka v. Department of Motor Vehicles*, at p. 1348.) "Procedurally, it is a fairly simple matter for the DMV to introduce the necessary foundational evidence. Evidence Code section 664 creates a rebuttable presumption that blood-alcohol test results recorded on official forms were obtained by following the regulations and guidelines of title 17. [Citations.] . . . The recorded test results are presumptively valid and the DMV is not required to present additional foundational evidence. [Citation.]" (*Shannon v. Gourley* (2002) 103 Cal.App.4th 60, 64, 65 [126

Cal.Rptr.2d 327].) With this presumption, the officer's sworn statement that the breath-testing device recorded a certain blood-alcohol level is sufficient to establish the foundation, even without testimony at the hearing establishing the reliability of the test. (*Davenport v. Department of Motor Vehicles* (1992) 6 Cal.App.4th 133, 140-141 [7 Cal.Rptr.2d 818]; *Snelgrove v. Department of Motor Vehicles* (1987) 194 Cal.App.3d 1364, 1366 [240 Cal.Rptr. 281].)

Once the DMV establishes its prima facie case by presenting documents contemplated in the statutory scheme, the driver must produce affirmative evidence of the nonexistence of the presumed facts sufficient to shift the burden of proof back to the DMV. (*Baker v. Gourley* (2000) 81 Cal.App.4th 1167, 1172 [97 Cal.Rptr.2d 451]; cf. *Jackson v. Department of Motor Vehicles* (1994) 22 Cal.App.4th 730, 739 [27 Cal.Rptr.2d 712]; *Davenport v. Department of Motor Vehicles, supra,* 6 Cal.App.4th at p. 144.) "The licensee must show, 'through cross-examination of the officer or by the introduction of affirmative evidence, that official standards were in any respect not observed . . . .' [Citation.] Once such showing has been made, the burden shifts to the DMV to prove that the test was reliable despite the violation." (*Baker v. Gourley,* 81 Cal.App.4th at pp. 1172-1173, quoting *Davenport v. Department of Motor Vehicles, supra,* 6 Cal.App.4th at p. 144; *Robertson v. Zolin* (1996) 44 Cal.App.4th 147, 151 [51 Cal.Rptr.2d 420].)

■ "In ruling on an application for a writ of mandate following an order of suspension or revocation, a trial court is required to determine, based on its independent judgment, ' "whether the weight of the evidence supported the administrative decision." ' " (*Lake v. Reed, supra,* 16 Cal.4th at p. 456.) Even exercising its independent judgment, the trial court still "must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence." (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817 [85 Cal.Rptr.2d 696, 977 P.2d 693].)

On appeal, this court ordinarily reviews the record to determine whether the trial court's findings are supported by substantial evidence. (*Lake v. Reed, supra,* 16 Cal.4th at p. 456.) But where, as here, the determinative question is one of statutory or regulatory interpretation, an issue of law, we may exercise our independent judgment. (See, e.g., *Smith v. Santa Rosa Police Dept.* (2002) 97 Cal.App.4th 546, 553 [119 Cal.Rptr.2d 72]; *Shippen v. Department of Motor Vehicles* (1984) 161 Cal.App.3d 1119, 1124 [208 Cal.Rptr. 13].)

## II. *Manriquez Failed to Rebut the Presumption of Officer Fenton's Compliance with Regulation 1219.3*

■■■ The DMV contends the trial court erred when it concluded Officer Fenton did not comply with regulation 1219.3's requirement that Manriquez be "under continuous observation for at least fifteen minutes prior to collection of the breath sample . . . ." It argues: (1) the regulation does not require constant observation in which the officer is "solely focused on the driver to the exclusion of everything and everyone else"; (2) Officer Fenton's testimony, combined with Manriquez's admission he had not burped in the 20 minutes before testing, supported the hearing officer's factual determination; (3) Manriquez did not rebut the official duty presumption that Officer Fenton complied with the 15-minute observation requirement; (4) the trial court's ruling would set a standard that is contrary to the public policy behind the administrative per se laws; and (5) Manriquez did not raise in his writ petition the determinative issue of whether compliance with the 15-minute rule was satisfied by Manriquez's admission that he did not burp.

Manriquez contends he adequately rebutted the Evidence Code section 664 presumption by Officer Fenton's own testimony on cross-examination and the DMV's exhibits, and the DMV did not present evidence the test was nevertheless reliable. He concludes the trial court therefore correctly granted the writ. We disagree.

Our consideration of the trial court's ruling requires us to ascertain the meaning of the phrase "continuous observation" in regulation 1219.3, which was adopted by the Department of Public Health in 1971. (See Health & Saf. Code, § 100700; see Historical Notes at <http://www.calregs.com> foll. Cal. Code Regs., tit. 17, § 1219.3 [as of Jan. 31, 2003]; *Intoximeters, Inc. v. Younger* (1975) 53 Cal.App.3d 262, 265 [125 Cal.Rptr. 864].) The trial court apparently based its ruling on an interpretation of regulation 1219.3 as obligating an officer to maintain direct and unbroken eye contact with the test subject for 15 minutes before the breath test. Because the evidence was undisputed Officer Fenton was driving at the same time he was observing Manriquez in the backseat of the vehicle before conducting the breath test, the trial court concluded it was impossible for the officer to comply with the continuous observation requirement. We do not so interpret the requirement.

■■■ " 'The interpretation of a regulation, like the interpretation of a statute, is, of course, a question of law . . . , and while an administrative agency's interpretation of its own regulation obviously deserves great weight . . . , the ultimate resolution of such legal questions rests with the courts. . . .' " (*Culligan Water Conditioning v. State Bd. of Equalization*

(1976) 17 Cal.3d 86, 93 [130 Cal.Rptr. 321, 550 P.2d 593], citations & fn. omitted; accord, *Merrill v. Department of Motor Vehicles* (1969) 71 Cal.2d 907, 917, fn. 15 [80 Cal.Rptr. 89, 458 P.2d 33]; *Yamaha Corp of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 14 [78 Cal.Rptr.2d 1, 960 P.2d 1031]; *Richard Boyd Industries, Inc. v. State Bd. of Equalization* (2001) 89 Cal.App.4th 706, 712-713 [107 Cal.Rptr.2d 520].) The parties have not cited and we are not aware of any reported California decision that has interpreted regulation 1219.3's continuous observation requirement. We have not found, or been provided with, any administrative interpretation of the regulation. We therefore proceed to interpret the regulation in accordance with applicable rules of statutory construction. (See *Merrill v. Department of Motor Vehicles*, at p. 918; *Intoximeters, Inc. v. Younger, supra*, 53 Cal.App.3d at p. 270 [same rules of construction for statutes govern the interpretation of regulations of administrative agencies].) Our foremost aim is to ascertain the intent of the agency issuing the regulation to effectuate the purpose of the law. (*Merrill v. Department of Motor Vehicles*, at p. 918; *Modern Paint & Body Supply, Inc. v. State Bd. of Equalization* (2001) 87 Cal.App.4th 703, 708 [104 Cal.Rptr.2d 784].) When the agency's intent cannot be discerned directly from the language of the regulation, we may look to a variety of extrinsic aids, including the purpose of the regulation, the legislative history, public policy, and the regulatory scheme of which the regulation is a part. (*People v. Bury* (1996) 41 Cal.App.4th 1194, 1205 [49 Cal.Rptr.2d 107].) Whenever possible, we will interpret the regulation to make it workable and reasonable. (*Intoximeters, Inc. v. Younger, supra*, 53 Cal.App.3d at p. 270.)

The phrase "continuous observation" is not defined in the regulations, and we begin with its plain meaning. "Continuous" has been defined as "[u]ninterrupted; unbroken, not intermittent or occasional; so persistently repeated at short intervals as to constitute virtually an unbroken series." (Black's Law Dict. (5th ed. 1979) p. 291, col. 2.) "Observation" is defined as "[t]he action or an act of paying attention, marking, or noticing; the fact of being noticed; notice, remark; perception." (Oxford English Dict. (2d ed. 1989) at <http://dictionary.oed.com> [as of Jan. 31, 2003].) To "perceive" is to "apprehend (an external object) through one of the senses (esp. sight); to become aware of by sight, hearing, or other sense; to observe; 'to discover by some sensible effects' . . . ." (*Ibid.*) In 1973, closer in time to the regulation's adoption, Webster's New Collegiate Dictionary defined "observe" as " 'to guard, watch . . . . to see or sense especially through directed careful analytic attention.' " (*State v. Reed* (Tex.App. 1994) 888 S.W.2d 117, 121.)

Giving this language its ordinary meaning, we hold that continuous observation for purposes of compliance with regulation 1219.3 does not

mean an officer must keep his or her eyes focussed on the subject for an uninterrupted 15-minute period. Observation is not limited to perception by sight; an officer may perceive a subject has eaten, drank, smoked, vomited or regurgitated[2] by sound or smell and the perception by senses other than sight can be sufficient to comply with the regulation. Further, the regulation should be interpreted with reference to its purpose, which is to determine whether the test subject has smoked, ingested food or drink, or suffered physical symptoms that would adversely affect the test results. (See Health & Saf. Code, § 100715 [providing testing of breath samples by law enforcement shall be performed in accordance with regulations adopted by the Department of Health].)[3] In our view, uninterrupted eye contact is not necessary (and may not always be sufficient by itself) to determine whether the proscribed events have occurred, so long as the officer remains present with the subject and able by the use of all his or her senses to make that determination. Our conclusion is consistent with a workable interpretation of the continuous observation rule, and also with the conclusions of other jurisdictions that have addressed this issue under similar regulations. (See *State v. Smith* (1988) 16 Conn.App. 156 [547 A.2d 69, 73] [holding regulation requiring subject be under continuous observation did not require officer to "fix his unswerving gaze" on a subject during 15-minute interval before breath test; the fact officer operated police cruiser, prepared intoximeter for use and processed paperwork during the observation period did not require suppression of breath analysis tests]; *Glasmann v. State, Dept. of Revenue, Motor Vehicle Div.* (Colo.Ct.App. 1986) 719 P.2d 1096, 1097 [regulation requiring officer to closely and continuously observe the subject did not require in all cases that the officer "stare fixedly" at a test subject; officer complied with requirement even though during the 22 minutes preceding the test he completed a custody report, a summons, and a notice of revocation in front of the defendant]; *In re Ramos* (1987) 155 Ill.App.3d 374 [108 Ill.Dec. 323, 508 N.E.2d 484, 486] [state trooper held to comply with regulation requiring continuous observation even where six minutes directly before

---

[2]"Regurgitate" is defined as: "To expel the contents of the stomach in small amounts, short of vomiting." (PDR Medical Dict. (2d ed. 2000), p. 1546, col. 1.)

[3]The continuous observation requirement apparently ensures the subject's mouth is free of alcohol that might skew the test results. (See, e.g., *Robertson v. Zolin, supra,* 44 Cal.App.4th 147, 152 [51 Cal.Rptr.2d 420] [observing that the form on which test results were recorded indicated that presence of mouth alcohol requires the officer to stop the test and recommence a 15-minute observation of the driver]; *State v. Cook* (Tenn. 1999) 9 S.W.3d 98, 100-101 [purpose of the requirement that a subject's mouth be free from foreign matter for 20 minutes before test administration is to ensure no foreign matter is present in the defendant's mouth that could retain alcohol and potentially influence the results of the test].) Regulation 1219.3 also requires the breath sample to be "essentially alveolar in composition," i.e., it must come from deep within the lungs. (See *People v. French* (1978) 77 Cal.App.3d 511, 521 [143 Cal.Rptr. 782].) Presumably the prohibition on smoking during the observation period ensures the breath sample meets that requirement.

administering the test, trooper was concentrating on resetting the machine rather than simply standing and staring at the defendant; defendant did not leave the area and was constantly in peripheral vision of trooper, who did not observe smoke or vomit in the area]; see also *State v. Cash* (1995) 3 Neb.App. 319 [526 N.W.2d 447, 451] [officer need not stare fixedly at the person being tested for the specified period of time in order to satisfy the observation requirement, but must remain in the person's presence and be aware of the person's conduct; citing cases].)

Here, Officer Fenton testified he remained with Manriquez while Manriquez was confined to the back of his patrol car for at least 25 minutes[4] before he performed the breath test and during that time, Manriquez did not eat, drink, smoke or vomit. While he was driving, Officer Fenton looked at Manriquez and engaged him in conversation, which further assisted the officer in determining whether Manriquez was engaging in the proscribed conduct. The officer's close physical proximity and interaction with Manriquez met the continuous observation requirements of regulation 1219.3; he not only visually observed Manriquez through his rearview mirror, but also listened to him and was close enough using all of his senses to appreciate whether Manriquez was engaged in any of the proscribed acts. Asking Manriquez whether he burped in the past 20 minutes, while perhaps helpful, was not necessary to establish compliance with the regulation. Regulation 1219.3 requires the officer to ensure only that the subject has not had the proscribed materials in his mouth for the requisite period of time before conducting the test. In the circumstances of Manriquez's transport to the county jail, the fact the officer did not focus his eyes on Manriquez 100 percent of the time did not rebut the presumption that he properly performed the breath test in compliance with this regulation; the use of all of the officer's senses enabled him to assure compliance with the continuous observation requirement.

The testimony of Manriquez's expert, Rockwell, did not rebut the Evidence Code section 664 presumption by proving the inadequate foundational

---

[4]At the hearing, Officer Fenton explained he actually observed Manriquez for about 25 minutes because his partner dealt with Manriquez's vehicle:

"[Officer Fenton]: After I placed him in the rear of my patrol car, I sat in the driver's seat of my patrol car, and he was sitting to my right rear. And I'm asking questions, talking to him. And that's my observations, all the way to the county jail. By the time I get him in the seat [court reporter inserts a *"sic"* here], I've been with him for over—I think it was a little over 20 minutes, uh, since I had him in the car. I guess it'd be 25 minutes, about 25 minutes.

"[Manriquez's counsel]: Well, you testified that the tow truck got there at—

"[Officer Fenton]: I didn't do the storage of the vehicle, so—

"[Manriquez's counsel]: Well, it was turned over at 12:35 and the test is at 12:51. That'd be 16 minutes, correct?

"[Officer Fenton]: Like I said, I was in the patrol car. My partner/officer was dealing with the 180. That's why her signature's on the bottom. My partner/officer always takes care of the vehicle. The arresting officer sits in the car and starts the jail paperwork."

reliability of Officer Fenton's breath test. (*Baker v. Gourley, supra,* 81 Cal.App.4th at p. 1173.) Rockwell could not and did not challenge Officer Fenton's actual observations because he was not present at the scene; his opinion was based only on an understanding that regulation 1219.3 required the test subject to be in the officer's direct eyesight for the requisite 15-minute period.[5] Rockwell's testimony did not constitute affirmative evidence (or permit an inference) that Officer Fenton did not in fact continuously observe Manriquez within the meaning of regulation 1219.3, and thus no burden shifted to the DMV to establish the reliability of the test results. (*Davenport v. Department of Motor Vehicles, supra,* 6 Cal.App.4th at p. 144; *Baker v. Gourley,* at p. 1173.) Manriquez did not present evidence that during the 15-minute observation period he engaged in conduct that might invalidate the test results.

In reaching our conclusions, we emphasize we do not intend to pronounce the manner of observation that will satisfy regulation 1219.3 in all cases; we simply hold that continuous observation within the meaning of the rule does not require direct and unbroken eye contact for the 15-minute period as long as other means of uninterrupted observation are adequate. Under the circumstances of this case, Officer Fenton's testimony that he drove Manriquez during all or part of the observation period was not sufficient to rebut the presumption—established by his other testimony as well as his sworn report—that he conducted the breath test in compliance with regulation 1219.3's requirements.

Finally, we observe that even if Manriquez had proved Officer Fenton's observation did not comply with regulation 1219.3's requirements, noncompliance would not per se lead to a conclusion that the test results were affected, unreliable or inaccurate. (See *People v. Williams* (2002) 28 Cal.4th 408, 417 [121 Cal.Rptr.2d 854, 49 P.3d 203] [standards of reliability are

---

[5]When asked about his training in the administration of the observation period, Rockwell testified: "[I]n cases where you are a lone officer, if you find it necessary to put . . . the suspect, uh, uh, in your vehicle with you and you're alone, it's abundantly important that the person be within your sight, and, uh, preferably in direct site [*sic*]. Uh, it's important, especially if you find yourself needing to place the suspect in the back seat, that the person be, uh, in, in view. Uh, the worst possible position, although it poses an officer's safety problem, for viewing a suspect under Title 17 requirements, is, uh, right rear, because if you're the driver, you'll discover soon that the inside rear view mirror does not afford you a view of someone sitting back far right. Uh, however, uh, again, it's complicated by the fact that, since you're driving from the, from the front seat and the suspect's in, in the back seat, you're going to have to toggle your vision between driving responsibilities and keeping an ongoing view of the person so that the 15-minute rule, uh, which, by the way, my training and experience is not discretionary on the part of the officer, so that the 15-minute rule is not violated to, uh, the best of your ability. And if you discover that you can't keep an ongoing view of the suspect, then you have to wait an additional 15 minutes when that opportunity is available."

not coextensive with tit. 17, Cal. Code Regs. and blanket exclusion of test results is not justified by absence of substantial compliance with such regulations; noncompliance goes only to the weight of the evidence].)

In sum, the trial court's finding, based on its misinterpretation of regulation 1219.3, was erroneous as a matter of law. Because Manriquez failed to rebut the presumption favoring reliability of the breath test results under the proper interpretation of the continuous observation requirement, the trial court erred in granting his writ petition. We need not reach the DMV's remaining contentions.

## DISPOSITION

The judgment is reversed. Appellant is entitled to costs on appeal.

Kremer, P. J., and McDonald, J., concurred.