Filed 6/27/13  Bautista v. Shiomoto CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HECTOR BAUTISTA,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>JEAN SHIOMOTO, as Chief Deputy Director, etc.,<br><br>        Defendant and Respondent. | A134621<br><br>(Alameda County<br>Super. Ct. No. RG11588436) |

Hector Bautista appeals from the denial of his petition for a writ of mandate challenging the suspension of his driver's license on the basis that his breath test results were inaccurate because he suffers from Gastroesophageal Reflux Disease  (GERD).  We conclude the trial court reasonably determined the evidence of the effect of GERD on breath testing was speculative, and affirm.

**BACKGROUND**

**I.  *Arrest and Blood Alcohol Tests***

Bautista was pulled over at approximately 2:00 a.m. on July 17, 2010, after California Highway Patrol Officer Ty Franklin observed his car speeding and weaving between lanes.  His breath smelled of alcohol, his speech was slurred, and his eyes were red and watery.  Bautista admitted drinking three beers.  He failed a field sobriety test and a preliminary breath alcohol test produced readings of .095 percent and .10 percent blood-alcohol.

1

Bautista was arrested and transported to the Oakland CHP office, where he submitted to a breath test at 4:30 a.m. Two samples gave identical readings of .08 percent. Officer Franklin certified under penalty of perjury that he administered the breath test in compliance with the requirements of title 17 of the California Code of Regulations.

## II. *Administrative Hearing*

Bautista requested an administrative hearing pursuant to Vehicle Code section 13558. Officer Franklin testified about his observations of Bautista's driving, field sobriety, and both sets of breath tests. Officer Franklin's arrest and investigation reports and a printout of Bautista's breath test results were admitted. Bautista submitted medical documentation that he has suffered from GERD since 2009, including a 2009 examination report from the Manila Doctors Hospital and a medical assessment by Dr. Richard Nolan that was conducted several months after Bautista's arrest. According to Dr. Nolan, GERD causes a "constant and continuous" state of "regurgitation . . . whether it is felt or not."

Bautista also offered expert testimony by toxicologist David Lewis. Lewis, who did not examine Bautista, testified that the regurgitation of stomach gases caused by GERD invalidated Bautista's breath test results. Lewis acknowledged that not all scientists in the field agree with his view that GERD sufferers are incapable of producing a valid breath sample.

The hearing officer found Bautista's evidence was insufficient to rebut the results of his breath alcohol tests. The officer found Lewis's testimony was "too speculative to support the contention and is given no weight because expert's testimony is based on unknown factors of the respondent['s] actual condition and side effects of the condition at the time of the arrest. The testimony is based upon several old GERD studies and medical information taken several months after the arrest in which there was no evidence presented of respondent's present state of medical condition at the time of his arrest. There is only an assumption that the condition was as it presented in the endoscopy photos at the time of the arrest of the respondent, however it should be again [] noted that

2

the condition was noted to being subject to change, and that the respondent stated he had ulcer or no other medical conditions at the time of the arrest, and months later Respondent saw Dr. Richard Nolan. . . ." The hearing officer found "highly improbable" Lewis's testimony that GERD inflates breath test results by allowing stomach gases to erupt into the mouth through an open gastric valve.

Bautista's license was suspended for four months.

### III. *Trial Court Proceedings*

Bautista filed a petition for writ of administrative mandate seeking to reverse the suspension on the ground that his GERD caused a falsely inflated breath test result. He contended Lewis's expert testimony rebutted the presumption that the blood-alcohol test was reliable, the rebuttal evidence shifted the burden of proof back to the DMV, and the DMV failed to produce affirmative evidence to establish the test was reliable.

The superior court disagreed. It found Bautista did not rebut the DMV's prima facie case "because his proffered expert testimony and supporting evidence was too speculative and Petitioner did not show that the officers did not follow proper procedures. For example, Petitioner did not testify that he regurgitated, belched or that an officer did not observe him for 15 minutes prior to the collection of the breath sample. Officer Franklin testified that he did not see, smell or hear Petitioner belching during that 15 minute period. Petitioner's cross-examination of Officer Franklin did not conclusively show otherwise. It is undisputed that Petitioner did not inform CHP at [the] time of his arrest of his GERD condition. And, it is also undisputed that when asked, Petitioner said 'no' he was not under the treatment of any doctor or taking medication for any medical condition. Petitioner only told the officer that he had a stomach ulcer."

The court found Dr. Nolan's post-arrest medical evaluation insufficient to rebut the DMV's evidence that the breath test was correctly administered or to show that Bautista's GERD prevents him from producing a valid breath sample. Lewis's testimony "only raised the theoretical possibility based on speculation that the breath test was skewed or invalid."

3

Bautista timely appealed from the judgment denying his petition for writ of mandate.

## DISCUSSION

### I. *The Legal Framework*

The burdens of proof at administrative Department of Motor Vehicles (DMV) hearings are allocated as stated in *Manriquez v. Gourley* (2003) 105 Cal.App.4th 1227, 1232-1234.)  An administrative hearing before the DMV " 'does not require the full panoply of the Evidence Code provisions used in criminal and civil trials.'  [Citation.]  In this hearing, the DMV bears the burden of proving by a preponderance of the evidence certain facts, including that the driver was operating a vehicle with a blood-alcohol level of 0.08 percent or higher.  [Citations.]  The DMV may satisfy its burden via the presumption of Evidence Code section 664.  [Citation.]  'Procedurally, it is a fairly simple matter for the DMV to introduce the necessary foundational evidence.  Evidence Code section 664 creates a rebuttable presumption that blood-alcohol test results recorded on official forms were obtained by following the regulations and guidelines of title 17.  [Citations.] . . .  The recorded test results are presumptively valid and the DMV is not required to present additional foundational evidence.  [Citation.]'  [Citation.]  . . . . [¶] Once the DMV establishes its prima facie case by presenting documents contemplated in the statutory scheme, the driver must produce affirmative evidence of the nonexistence of the presumed facts sufficient to shift the burden of proof back to the DMV.  [Citations.]  'The licensee must show, "through cross-examination of the officer or by the introduction of affirmative evidence, that official standards were in any respect not observed . . . ."  [Citation.]  Once such showing has been made, the burden shifts to the DMV to prove that the test was reliable despite the violation.'  [Citations.] [¶] 'In ruling on an application for a writ of mandate following an order of suspension or revocation, a trial court is required to determine, based on its independent judgment, " 'whether the weight of the evidence supported the administrative decision.' " '  [Citation.]  Even exercising its independent judgment, the trial court still 'must afford a strong presumption of correctness concerning the administrative findings, and the party

4

challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence.' " (*Manriquez v. Gourley, supra*, 105 Cal.App.4th pp. 1232-1233; see also *Burge v. Department of Motor Vehicles* (1992) 5 Cal.App.4th 384, 389 [once chemical test report is admitted, burden shifts to the driver to show the test was flawed].)

On appeal, we review the record to determine whether the trial court's findings are supported by substantial evidence. We resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision. (*Lake v. Reed* (1997) 16 Cal.4th 448.) " ' "Where the evidence supports more than one inference, we may not substitute our deductions for the trial court's. [Citation.] We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings." ' " (*Id*. at p. 457.)

## II. *Substantial Evidence Supports the Trial Court's Findings*

Bautista's argument is, in essence, that the trial court was required to credit the evidence that his acid reflux condition necessarily invalidated his breath tests because it causes him to be in a " 'constant and continuous' state of regurgitation" that inflated the test results. We disagree. The only medical complaint Bautista divulged when he was arrested was his ulcer, and the trial court rejected as speculative Dr. Nolan's opinion that Bautista suffers "constant and continuous regurgitation" and did so at the time of his arrest four months before Nolan examined him, "whether it [was] felt or not." Dr. Nolan's credibility and the weight accorded his evidence was for the superior court to assess. (*Morgenstern v. Department of Motor Vehicles* (2003) 111 Cal.App.4th 366, 372; *Barber v. Long Beach Civil Service Com.* (1996) 45 Cal.App.4th 652, 658.) We do not reweigh that assessment on appeal. (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 622.) " ' " ' "So far as [the trial court] has passed on the weight of evidence or the credibility of witnesses, its implied findings are conclusive." ' " ' " (*Stafford v. Mach* (1998) 64 Cal.App.4th 1174, 1182.)

The trial court also reasonably found Lewis's testimony about GERD's effect on Bautista's breath test results was too speculative to shift the burden to the DMV to prove

the tests were reliable.  Lewis conceded his theory that GERD sufferers are incapable of producing a valid breath sample is not unanimously accepted within the relevant scientific community.   In fact, only one of seven doctors or toxicologists who addressed the issue in the text Lewis relied on unequivocally answered "yes" when asked whether GERD may adversely affect the reliability of breath tests.  One more offered the qualified opinion that if a person has "well documented problems with GERD *and suffered an attack just before the breath test, and if alcohol still remained unabsorbed in the stomach, this would be a potential problem.  However, the concentration of any alcohol erupting from the stomach needs to be considered."* (Italics added.)  Another responded that the test results may be impaired if the subject hiccups or belches stomach contents that contain non-metabolized alcohol.  Another believed it not very likely, cited studies that show no effect, and added that "A proper observation/deprivation should look for any regurgitation and vomiting."  The final response was that GERD was important in "Single Breath Test States," but "[n]ot very important in Duplicate Breath Test States." Even a statement Lewis described as coming from the most influential toxicologist in the field, Dr. A.W. Jones, referred only to the danger of alcohol that "comes up from the stomach *during a GERD attack*." (Italics added.)

Officer Franklin observed Bautista for at least 15 minutes prior to the test without observing any belching, hiccupping, or other activity suggesting he was experiencing a GERD "attack" that would contaminate the breath samples.  Bautista offered no evidence to the contrary, and no evidence that his stomach contained non-metabolized alcohol when he was tested.  (*Cf. People v. Bonutti* (2004) 212 Ill.2d 182, 186 [defendant told officer he suffered from GERD and reported experiencing a reflux episode before breath test].)  Instead, Bautista relied upon evidence that his chronic medical condition causes him to continuously and imperceptibly regurgitate stomach gas, and that his stomach gas contained unmetabolized alcohol that skewed the breath test results.  The trial court reasonably rejected that evidence.  We find no error.

6

# DISPOSITION

The judgment is affirmed.[1]

_____
Siggins, J.

We concur:

_____
McGuiness, P.J.

_____
Pollak, J.

---

[1] Bautista's March 28, 2013, motion to augment the record on appeal to include the transcript of the DMV proceedings in the record on appeal is denied as unnecessary. The superior court transmitted the administrative record, including the transcript, to this court on March 26, 2012.