Filed 5/20/20; Certified for Publication 6/15/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DALLANA DELGADO,<br><br>     Plaintiffs and Respondent,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF MOTOR VEHICLES,<br><br>     Defendant and Appellant. | A156708<br><br>(Contra Costa County<br>Super. Ct. No. N18-1849) |

The Department of Motor Vehicles (DMV) suspended Dallana Delgado's driver's license for driving with a blood-alcohol level of 0.08 percent or more. (Veh. Code, § 13353.2.)[1]  After an administrative hearing officer upheld the suspension, Delgado petitioned the trial court for a writ of mandate, contending she had presented evidence showing the police officer who administered the chemical test was not properly trained in using the test equipment.  The trial court granted the writ, concluding Delgado's evidence rebutted the presumption that the test was performed properly.  We disagree with the trial court, and therefore reverse the judgment.

---

[1] All undesignated statutory references are to the Vehicle Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Officer Walker of the Concord Police Department responded to a report of a hit and run collision at 2:15 a.m. on October 2, 2016.  At the scene, he was told a vehicle involved in the collision had fled to a loading dock area.  When he found the vehicle, Delgado was standing by the driver's door and another person was at the passenger's side door.  Delgado acknowledged that she had been driving the car during the collision, that she had had " '[a]t least two, maybe three' " beers during the evening, and that she was still feeling the effects of the alcohol.  Delgado showed signs of intoxication:  her breath smelled of alcohol; she had bloodshot, watery eyes; her speech was slurred; her responses were delayed; and her upper body swayed.  Her field sobriety tests were consistent with intoxication.  Delgado later admitted she had gone to a bar with her companion around 9:30 the previous evening and had three or four beers, consuming the last one at about 11:00 p.m.  When they left the bar, she drove the car because her companion had drunk too much alcohol to drive safely, and as she drove, she failed to see a red light and got into the collision.

After Officer Walker arrested Delgado, he administered two breath tests for alcohol on a Draeger machine.  Both showed a blood-alcohol level of 0.15 percent, nearly twice the legal limit.  In his statement, Walker certified under penalty of perjury that he was "qualified to operate this equipment and that the test was administered pursuant to the requirements of Title 17 of the California Code of Regulations."  Walker signed a checklist setting out instructions for carrying out the test on the machine, a Draeger AlcoTest 7110 MK III C.

The DMV held a hearing on whether Delgado's driving privileges should be suspended.  The hearing was continued several times, some of the

2

continuances at Delgado's request. At the continued July 12, 2018 hearing, Walker did not appear in response to the DMV's subpoena; the record does not reveal the reason for his absence.

Delgado subpoenaed records from the Contra Costa County Criminalistics Laboratory (CCC Laboratory) seeking, inter alia, "a copy of the certificate of training or authorization evidencing the qualification of [Officer Walker] as operator of the AlcoTest 7110 breath testing machine." In response, the custodian of records for CCC Laboratory stated, "[W]e found no training record for Officer Daniel Walker." The packet of information also indicated that if a search for a training record yielded no result, a request for more information could be submitted to the CCC Laboratory. The CCC Laboratory's response was admitted into evidence at the administrative hearing.

The hearing officer ordered Delgado's license suspended for four months, finding by a preponderance of the evidence that Delgado was driving with a blood-alcohol level at or above 0.08 percent. In particular, as pertinent here, the officer found that the CCC Laboratory's affidavit did not show Officer Walker was not trained to operate the alcohol test equipment, and that Delgado had failed to rebut the presumption that Officer Walker carried out his official duty properly.

Delgado then petitioned the trial court for a writ of mandate, contending that the evidence she submitted rebutted the presumption that the test was administered properly and that she was deprived of the right to confront and cross-examine Officer Walker because the DMV did not enforce its subpoena. The trial court granted the petition, concluding the CCC Laboratory's affidavit was sufficient evidence that Officer Walker was not

3

properly trained and shifted the burden to the DMV to show the test results were reliable.

The DMV moved for reconsideration, submitting evidence that Walker had been trained on a Draeger machine—albeit with a different model number—in another county where he had previously worked. The trial court denied the motion for reconsideration.

## DISCUSSION

Under California's "administrative per se" law, the DMV must suspend the driving privilege of a person who was driving a motor vehicle with a blood-alcohol level of 0.08 percent or more. (§ 13353.2, subd. (a); *McKinney v. Department of Motor Vehicles* (1992) 5 Cal.App.4th 519, 522–523, 526 (*McKinney*).) The licensee has a right to an administrative hearing, and the hearing officer's decision is subject to judicial review. (§§ 13558, 13559; *McKinney*, at p. 523.) The trial court exercises its independent judgment to determine whether the administrative decision was supported by the weight of the evidence. (*Baker v. Gourley* (2000) 81 Cal.App.4th 1167, 1172 (*Baker*).) On appeal, we determine whether substantial evidence supports the trial court's findings. (*Ibid.*; accord *Coombs v. Pierce* (1991) 1 Cal.App.4th 568, 576.) To the extent the question is one of statutory or regulatory interpretation, we exercise our independent judgment. (*Manriquez v. Gourley* (2003) 105 Cal.App.4th 1227, 1233 (*Manriquez*).)

An administrative hearing in this context involves shifting burdens of proof. The DMV bears the initial burden of proving by a preponderance of the evidence that the licensee was driving with a blood-alcohol level of 0.08 percent or higher. (*Manriquez, supra*, 105 Cal.App.4th at p. 1232.) " 'Procedurally, it is a fairly simple matter for the DMV to introduce the necessary foundational evidence. Evidence Code section 664 creates a

4

rebuttable presumption that blood-alcohol test results recorded on official forms were obtained by following the regulations and guidelines of title 17," and the test results are presumptively valid. (*Manriquez*, at p. 1232.) Thus, "the officer's sworn statement that the breath-testing device recorded a certain blood-alcohol level is sufficient to establish the foundation, even without testimony at the hearing establishing the reliability of the test." (*Id.* at p. 1233.) To establish that test results are reliable, it must be shown that the apparatus was in proper working order, the test was properly administered, and the operator was competent and qualified. (*Davenport v. Department of Motor Vehicles* (1992) 6 Cal.App.4th 133, 140 (*Davenport*).)

Once the DMV meets this initial burden to establish a prima facie case, the driver may rebut the presumption with "affirmative evidence of the nonexistence of the presumed facts sufficient to shift the burden of proof back to the DMV." (*Manriquez*, *supra*, 105 Cal.App.4th at p. 1233.) This burden may be met by showing, "through cross-examination of the officer or by the introduction of affirmative evidence, that official standards were in any respect not observed." (*Davenport*, *supra*, 6 Cal.App.4th at p. 144.) The licensee may subpoena the officer and anyone else having relevant knowledge, as well as relevant documents. (*Id.* at pp. 144–145.) The driver's showing "cannot rest on speculation, but must demonstrate a reasonable basis for an inference that the procedures were not properly followed." (*Petricka v. Department of Motor Vehicles* (2001) 89 Cal.App.4th 1341, 1348 (*Petricka*).) If the driver meets that burden, the burden shifts back to the DMV to prove the test was reliable despite the violation. (*Davenport*, at p. 144.)

There is no dispute that the DMV met its initial burden by submitting the pertinent reports. In particular, Officer Walker stated under penalty of

perjury that he was qualified to operate the testing equipment and the test was administered according to the applicable regulations. The question, rather, is whether the trial court properly found the CCC Laboratory's affidavit sufficient to show that Officer Walker was not qualified to administer the test, thus returning the burden to the DMV.

We conclude substantial evidence does not support this finding. The affidavit shows nothing more than that the CCC Laboratory did not have a record of Officer Walker's training. Delgado points to regulations that require operators to be trained in "[p]rocedures of analysis for the specific breath alcohol testing instrument used by the agency" (Cal. Code Regs., tit. 17, § 1221.2, subd. (a)(3)(B)(i)); for records to "be kept for each instrument at a forensic alcohol laboratory showing compliance with this Section" (Cal. Code Regs., tit. 17, § 1221.2, subd. (a)(6)(A)); and for forensic laboratories to maintain records documenting their compliance with the applicable regulations (Cal. Code Regs., tit. 17, § 1222). But neither Delgado's evidentiary showing nor these regulations indicate that if Walker had been trained in the testing device at any point in his career, the CCC Laboratory—rather than another laboratory—would have had a record of it. With nothing to fill that evidentiary gap, there is no "reasonable basis for an inference that the procedures were not properly followed." (*Petricka, supra,* 89 Cal.App.4th at p. 1348.)

Delgado was not prevented from attempting to fill that gap. Officer Walker himself could have been examined to determine whether he was properly trained to operate the testing equipment. Delgado had a right to compel his attendance (*Monaghan v. Department of Motor Vehicles* (1995) 35 Cal.App.4th 1621, 1625–1626), and if she required his testimony to show he was not properly trained in the testing device, it was incumbent upon her to

6

take steps to secure it (see *Petricka*, *supra*, 89 Cal.App.4th at p. 1351). When Officer Walker failed to appear in response to the DMV's subpoena, Delgado could have sought a continuance of the hearing and asked the hearing officer to issue a subpoena on her behalf. (*Snelgrove v. Department of Motor Vehicles* (1987) 194 Cal.App.3d 1364, 1376; *Petricka*, at p. 1351; *Scott v. Pierce* (1990) 221 Cal.App.3d 654, 657 ["Even when the officer fails to appear after being served with a subpoena by DMV . . . the licensee must ask for a continuance to secure the officer's attendance or any objection to his nonappearance is waived"]; § 14104.5, subd. (a).) She failed to do so.

We recognize that our standard of review for the trial court's factual findings is substantial evidence, and that in carrying out our review, we must resolve all evidentiary conflicts and draw all reasonable inferences in favor of the trial court's decision. (*Freitas v. Shiomoto* (2016) 3 Cal.App.5th 294, 300 (*Freitas*).) But the inferences must be *reasonable*, and they cannot rest on speculation. (*Petricka*, *supra*, 89 Cal.App.4th at p. 1348.) An appellant's burden under this standard is not impossible to meet: In *Baker*, the trial court found a driver had shifted the burden to the DMV with expert testimony that a blood sample's seal had been cut six days before the sample was tested. (*Baker*, *supra*, 81 Cal.App.4th at pp.1169–1172.) The appellate court reversed, concluding there had been no showing that cutting the seal six days before testing compromised the integrity of the sample or that official standards were not observed. (*Id*. at pp. 1173–1174.) The record showed "no more than a mere possibility that the integrity of the sample was not maintained," and "[s]uch speculation [was] insufficient to support a reasonable inference" that the sample was compromised. (*Id*. at p. 1174.) Similarly here, the absence of training records for Officer Walker at the CCC Laboratory does not, in itself, constitute substantial evidence to support a

7

reasonable inference that he was not properly trained in the use of the testing device.

For a contrary conclusion, Delgado relies on *Freitas*, *supra*, 3 Cal.App.5th 294, and *Najera v. Shiomoto* (2015) 241 Cal.App.4th 173. Both of these cases concluded the presumption that test results were reliable had been rebutted by expert testimony that blood test data collected from only one column of a gas chromatograph does not establish the concentration of alcohol without confirmation by data from a second column. (*Freitas*, at pp. 301–303, *Najera*, at pp. 181–182.) Delgado also relies on *Shea v. Department of Motor Vehicles* (1998) 62 Cal.App.4th 1057, which held that a forensic alcohol report based on tests performed by unsupervised trainees was not admissible as an official record of the DMV: Because trainees were allowed to perform forensic analysis only when supervised, an unsupervised trainee was not acting within the scope of a public employee's duty. (*Id.* at p. 1059.) Thus, in each of these cases, unlike the one before us, there was affirmative evidence that the test was not conducted or reported properly. No such evidence exists here.

We conclude, therefore, that the burden did not shift to the DMV to show that official standards were not observed. We need not consider the DMV's additional argument that the other signs of Delgado's intoxication support the hearing officer's ruling.

### DISPOSITION

The judgment is reversed. In the interests of justice, the parties shall bear their own costs on appeal.

8

_____

TUCHER, J.

WE CONCUR:

_____

STREETER, Acting P. J.

_____

BROWN, J.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| DALLANA DELGADO,<br><br>    Plaintiffs and Respondent,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF<br>MOTOR VEHICLES,<br><br>    Defendant and Appellant. | A156708<br><br>(Contra Costa County<br>Super. Ct. No. N18-1849)<br><br>**ORDER FOR PUBLICATION** |

**BY THE COURT\*:**

The written opinion which was filed on May 20, 2020 has now been certified for publication pursuant to rule 8.1105(b) of the California Rules of Court, and it ordered published in the official reports.

Date:_____          _____ Acting P. J.

---

\* Streeter, Acting P.J., Tucher, J., and Brown, J. participated in the decision.

1

Trial Court:                Contra Costa County Superior Court

Trial Judge:                Hon. Charles S. Treat

Counsel for Appellant:      Xavier Becerra, Attorney General; Chris A. Knudsen,
                            Senior Assistant Attorney General; Miguel A Neri,
                            Fiel D. Tigno, Supervising Deputy Attorneys General;
                            Christopher D. Beatty, Deputy Attorney General

Counsel for Respondents:    Knutsen Law Office, Thomas Knutsen

*Delgado v. California Department of Motor Vehicles* (A156708)

2