Filed 11/26/25  Rieman v. Department of Motor Vehicles CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RAYMOND PATRICK RIEMAN, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> DEPARTMENT OF MOTOR VEHICLES et al., <br><br> Defendants and Respondents. | F087870 <br><br> (Super. Ct. No. BCV-23-100647) <br><br> **OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Kern County.  T. Mark Smith, Judge.

Middlebrook & Associates, Richard O. Middlebrook and Gabrielle Burnett for Plaintiff and Appellant.

Rob Bonta, Attorney General, Chris A. Knudsen, Assistant Attorney General, Katharine Tremblay and Gardenia M. Montero, Deputy Attorneys General, for Defendants and Respondents.

-ooOoo-

This appeal involves the suspension of appellant Raymond Patrick Rieman's driver's license following an administrative per se (APS) hearing. An administrative hearing officer (AHO) for respondent Department of Motor Vehicles (DMV) concluded that Rieman had driven his car with a blood-alcohol content (BAC) of 0.08 percent or greater and upheld the suspension of his driver's license. The AHO's decision was subsequently upheld by the Kern Superior Court. In this appeal, Rieman contends that: (1) the trial court erred by conducting a harm analysis after concluding that his due process right to an impartial adjudicator was violated; (2) the APS hearing was void because the AHO acted as an adjudicator and an investigator, advocate, and/or a prosecutor in violation of Government Code section 11425.30; (3) the APS hearing was void because it was conducted without rules or regulations that were passed in conformity with the Administrative Procedure Act (APA)[1]; and (4) there was insufficient evidence that his BAC was 0.08 percent or greater because the arresting officer did not wait at least 15 minutes after the breath test device read "mouth alcohol" before he conducted additional breath tests. We affirm.[2]

## APS SYSTEM

In California, the DMV must immediately suspend the driver's license of a person who is driving with a BAC of 0.08 percent or more. (Veh. Code, § 13353.2, subd. (a)(1).)[3] However, drivers have a right to an administrative hearing, that is an APS hearing, before the suspension of a license takes effect. (*Cisneros v. Department of Motor Vehicles* (2024) 104 Cal.App.5th 381, 408.) At the APS hearing, an AHO determines: whether an arresting officer had reasonable cause to believe the driver was

---

[1] The APA is codified in Government Code section 11340 et seq.

[2] Rieman requests that we take judicial notice of various documents and dockets from other courts, as well as an analysis from the DMV regarding APS hearings. Because these documents are not sufficiently necessary, helpful, or relevant to the resolution of this appeal, we deny Rieman's request for judicial notice. (*Knudsen v. Department of Motor Vehicles* (2024) 101 Cal.App.5th 186, 194, fn. 1 (*Knudsen*).)

[3] Unless otherwise noted, all further statutory references are to the Vehicle Code.

driving, whether the driver was lawfully arrested, and whether the driver was driving with a BAC of 0.08 percent or greater. (*Evans v. Gordon* (2019) 41 Cal.App.5th 1094, 1101 (*Evans*).) The Legislature crafted the APS laws to address the time lag that often occurs between an arrest and a conviction for driving while intoxicated or with a prohibited BAC. (*MacDonald v. Gutierrez* (2004) 32 Cal.4th 150, 155.) As a result, APS hearings are intended to be expedited (*Lake v. Reed* (1997) 16 Cal.4th 448, 454–455 & fn. 2 (*Lake*)), and the rules governing the admissibility of evidence are relaxed. (*MacDonald, supra*, at p. 159.) The DMV bears the burden at the APS hearing of demonstrating that the driver drove with a BAC of 0.08 percent or more. (*Gerwig v. Gordon* (2021) 61 Cal.App.5th 59, 65 (*Gerwig*); *Petricka v. Department of Motor Vehicles* (2001) 89 Cal.App.4th 1341, 1348.)

## PROCEDURAL BACKGROUND

On July 10, 2022, Rieman was arrested for violation of section 23152, subdivision (a) (driving under the influence of alcohol), and section 23152, subdivision (b) (driving with a BAC of 0.08percent or more).

On January 31, 2023, an APS hearing was conducted pursuant to section 13557.

On February 1, 2023, the AHO found that Rieman had been lawfully arrested and had driven with a BAC of 0.08 percent or more. As a result, Rieman's license was suspended pursuant to sections 13353.2 and 13353.3.

On March 2, 2023, Rieman filed an administrative writ of mandate with the Kern Superior Court to challenge the suspension determination.

On February 21, 2024, the trial court denied the writ.

On April 8, 2024, Rieman filed a notice of appeal.

## FACTUAL BACKGROUND

On July 10, 2022, at 3:55 p.m., California Highway Patrol Officer Jose Horta was traveling in Kern County. Horta saw another vehicle approaching him from the opposite direction. Horta visually estimated that the other vehicle's speed was 108 miles per hour,

3.

and his radar indicated that the vehicle was traveling at 110 miles per hour. The speed limit at that stretch of road was 60 miles per hour. Horta then made a U-turn, activated his lights, and accelerated after the other vehicle. After accelerating to 100 miles per hour, Horta was able to get behind the other vehicle, which pulled over off of the road.

Horta determined that Rieman was the driver of the speeding vehicle. Horta observed that Rieman had red watery eyes and slurred speech and that there was a strong odor of alcohol coming from Rieman's breath. Rieman admitted that he had consumed alcohol that day and answered Horta's field sobriety questions. Rieman did not pass the horizontal gaze and nystagmus test and was unable to complete two other field sobriety tests (the one-legged stand and the walk and turn). A preliminary alcohol screening test indicated that Rieman had a BAC of 0.118 percent. Horta arrested Rieman at 4:15 p.m. for driving while under the influence of an alcoholic beverage.

Horta informed Rieman about implied consent, and Rieman chose to have a breath test. Prior to administering any breath tests, Horta stated that he had continuously observed Rieman for over 15 minutes. In that period of time, Horta did not observe Rieman ingest any fluids, eat, smoke, or vomit. Three breath tests were administered. The first was administered at 4:25 p.m. The first test did not result in a BAC reading, but instead read: "Mouth Alcohol." A second breath test was administered at 4:30 p.m., and a third test was administered at 4:33 p.m. The second test resulted in a BAC of 0.112 percent, and the third test resulted in a BAC of 0.11 percent.

### APS Hearing and Decision

On January 31, 2023, an APS hearing was held. The AHO explained that there were three issues for the hearing: did Horta have reasonable cause to believe that Reiman was driving under the influence, was Reiman lawfully arrested, and was Rieman driving with a BAC of 0.08 percent or more? After explaining the issues to be adjudicated, the AHO asked if an opening statement would be made. Reiman's counsel declined to make an opening statement. The AHO then identified and marked as exhibits Horta's unsworn

4.

statement, a sworn driving under the influence arrest investigation report, which is also known as a DS 367 form and which contained the breath test results, and Rieman's driving record. After individually identifying each record, the AHO asked if there were any objections. Rieman's counsel responded each time that she had no objections, and the AHO admitted the records as exhibits. Once the third exhibit was admitted, the AHO stated that there was no further evidence by the DMV and told Rieman that he could present his case. Rieman's counsel stated, "Submitted. Thank you so much." The AHO then concluded the hearing.

On February 1, 2023, the AHO issued a written decision that suspended Rieman's license for one year. The AHO determined that Rieman was lawfully stopped, that reasonable cause existed for Rieman's arrest, and that Rieman drove with a BAC of 0.08 percent or more. The AHO's conclusion regarding Rieman's BAC level was "based on the lack of sufficient evidence to rebut the [breath] test results .…"

### Trial Court Proceedings

On March 2, 2023, Rieman filed a petition for peremptory writ of mandamus through which he sought to set aside the suspension of his license. A hearing on the writ was held on January 17, 2024, and a decision was issued on February 21, 2024. In relevant part, the trial court addressed the admissibility of the breath test results and whether the APS hearing violated Rieman's right to due process.

With respect to due process, the trial court held that the issue was forfeited because Rieman made no objection at the APS hearing. Alternatively, the court found that the AHO acted in the dual capacity of an advocate and adjudicator as prohibited by *California DUI Lawyers Assn. v. Department of Motor Vehicles* (2022) 77 Cal.App.5th 517 (*CDLA*). However, the court found that the due process error was harmless because Rieman failed to demonstrate a reasonable probability that the result of the APS hearing would have been different.

With respect to the admissibility of the breath tests, the trial court first found the issue was forfeited because Rieman failed to object at the APS hearing. Alternatively, the court found that Rieman had not demonstrated that the breath tests were conducted in violation of Title 17, section 1221.1, subdivision (b)(1) of the California Code of Regulations (regulation 1221.1(b)). The court found that Horta had stated that he had observed Rieman for at least 15 minutes and that Rieman did not put anything in his (Rieman's) mouth or vomit. Although the first breath test resulted in a "Mouth Alcohol" reading instead of a BAC level, the court found Rieman had failed to show that Horta was required to wait an additional 15 minutes before administering additional breath tests.

## I. Due Process

### A. Parties' Arguments

Rieman argues in part that the trial court correctly concluded that his due process rights were violated when the AHO acted as an advocate and adjudicator. Rieman argues that this conclusion is correct because the AHO introduced documents into evidence at the APS hearing, and choosing what documents to introduce and then making a decision based on those documents improperly combines advocacy with adjudication. However, Rieman argues that the court incorrectly found the violation was harmless because the violation is a structural error that is not subject to a harm analysis.

The DMV contends in part that Rieman's due process rights were not violated. The DMV argues the record demonstrates that the AHO merely gathered and developed evidence, in addition to acting as the adjudicator. The DMV argues the *CDLA* decision recognized that such conduct does not violate due process.

### B. Legal Standard

Challenges to the procedural fairness of an administrative hearing presents a question of law that is reviewed de novo on appeal. (*Romane v. Department of Motor Vehicles* (2025) 110 Cal.App.5th 1002, 1016, petition for review granted Aug. 13, 2025,

6.

S291093 (*Romane*);[4] *Knudsen, supra*, 101 Cal.App.5th at p. 210.) An irreducible minimum of the federal and California constitutional rights to due process is that an impartial adjudicator must preside over a hearing. (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212 (*Today's Fresh Start*); *Knudsen, supra*, at pp. 197–198.) The requirement of an impartial adjudicator is violated if the adjudicator is actually biased or operates under a constitutionally intolerable probability of bias. (*Morongo Band of Mission Indians v. State Water Resources Control Bd.* (2009) 45 Cal.4th 731, 737; *Knudsen, supra*, at p. 198.) A violation of the due process right to an impartial adjudicator is a structural error that is not subject to a harm analysis. (*Clarke v. Gordon* (2024) 104 Cal.App.5th 1267, 1277 (*Clarke*); *Knudsen, supra*, at p. 206.)

Combining the roles of adjudicator and advocate into a single person is a violation of the due process right to an impartial adjudicator because it creates a constitutionally intolerable probability of bias. (*Kazelka v. Department of Motor Vehicles* (2025) 109 Cal.App.5th 1239, 1255 (*Kazelka*); *Knudsen, supra*, 101 Cal.App.5th at p. 199; *CDLA, supra*, 77 Cal.App.5th at p. 532.) Whether an AHO at an APS hearing unconstitutionally acted as an advocate is determined by examining the record, hearing transcripts, and the AHO's decision to see if the AHO engaged in advocacy. (*Romane, supra*, 110 Cal.App.5th at p. 1020, review granted; *Kazelka, supra*, at p. 1255; *Clarke, supra*, 104 Cal.App.5th at p. 1275; *Knudsen, supra*, at pp. 206–207.) If the record shows that the AHO engaged in advocacy, then due process is violated, and the driver is entitled to a new APS hearing before an impartial AHO. (*Clarke, supra*, at p. 1275; *Knudsen, supra*, at pp. 193, 212–213.)

---

[4] In its order granting the petition for review, our Supreme Court did not depublish *Romane*, but stated that the opinion could be cited for its persuasive value. Consistent with the order granting review, we cite *Romane* as persuasive authority.

## C.   Analysis[5]

The trial court erred by conducting a harm analysis after concluding that the AHO acted as both an advocate and an adjudicator. (*Knudsen, supra*, 101 Cal.App.5th at p. 206.) To be fair, this was an open question at the time the court issued its decision. Nevertheless, in *Knudsen*, we determined that a violation of the due process right to an impartial adjudicator is a structural error that is not subject to a harm analysis. (*Ibid.*; see *Clarke, supra*, 104 Cal.App.5th at p. 1277.) Therefore, if the AHO actually engaged in advocacy as found by the court, then Rieman is entitled to a new APS hearing irrespective of whether he can demonstrate harm. (*Clarke, supra*, at p. 1275; *Knudsen, supra*, at pp. 193, 212–213.) However, we conclude that the AHO did not engage in advocacy.

At the APS hearing, the AHO introduced himself and explained what issues would be decided. No witnesses were called or examined, no opening or closing arguments were made, and no legal rulings were made. Instead, the AHO simply admitted three exhibits: Rieman's driving record, Horta's arrest report, and the DS 367 form. Rieman did not object to the introduction, admission, or consideration of these exhibits by the AHO. Following the admission of the exhibits by the AHO, Rieman submitted the matter for decision without presenting any evidence or making any arguments, and the hearing ended. Further, there are no obvious legal errors or clear mischaracterizations of evidence in the AHO's decision that would indicate advocacy. Therefore, there are no acts of advocacy discernable from the record. (*Romane, supra*, 110 Cal.App.5th at pp. 1016–1021, review granted [finding no due process violation where the AHO merely admitted evidence]; cf. *Knudsen, supra*, 101 Cal.App.5th at pp. 210–213 [finding a due

---

[5]   Assuming that the DMV is correct that Rieman forfeited his due process challenge by not objecting at the AHO hearing, we will exercise our discretion and consider Rieman's challenge because the question involves only the undisputed facts in the record and raises a pure question of law. (*Knudsen, supra*, 101 Cal.App.5th at p. 196.)

process violation where the AHO mischaracterized evidence, made legal errors that benefitted the DMV, and asked questions that were not consistent with developing testimony].)

Rieman argues that the act of choosing what records to introduce, admitting those records, and then deciding the matter based on those chosen records constitutes advocacy. We disagree. Without violating the due process right to an impartial adjudicator, an agency may permit a single person to act as both an adjudicator and as a collector and developer of evidence in the same proceeding. (*Todays Fresh Start, supra*, 57 Cal.4th at p. 220; *Romane, supra*, 110 Cal.App.5th at pp. 1014–1015, review granted; *Kazelka, supra*, 109 Cal.App.5th at p. 1255; *Knudsen, supra*, 101 Cal.App.5th at p. 199; *CDLA, supra*, 77 Cal.App.5th at p. 533, fn. 5.)

Additionally, a prima facie case that is sufficient to suspend a driver's license may be established through the admission of documents such as sworn and unsworn police reports that establish a lawful arrest and the driver's BAC level. (See *Lake, supra*, 16 Cal.4th at pp. 451–452; *Romane, supra*, 110 Cal.App.5th at pp. 1016–1018, review granted; *Gerwig, supra*, 61 Cal.App.5th at pp. 65–66; *Delgado v. Department of Motor Vehicles* (2020) 50 Cal.App.5th 572, 577.) This is because when a driver is arrested for driving under the influence of alcohol, law enforcement officers are required to forward a sworn report to the DMV that includes the facts and circumstances of the arrest and the results of any BAC tests. (§ 13380; *Romane, supra*, at pp. 1016–1017, review granted.) As a result, most APS hearings are resolved through sworn and unsworn police records.[6] (*Lake, supra*, at pp. 451–452; *Romane, supra*, at pp. 1016–1018, review granted; *Gerwig, supra*, at pp. 65–66.)

Given the routine and accepted practice of admitting police records at APS hearings, as well as the fact that law enforcement is obligated to forward a sworn record

---

[6] We note the DMV is also statutorily required to consider at an APS hearing its official records pertaining to the driver. (§ 14104.7.)

to the DMV, the introduction and admission of these records would not involve independent investigatory work; nor would it involve some form of pre-hearing assessment in which multiple documents are examined in order to find and admit only the most damning evidence against the driver. Rather, the introduction and admission of routine police records is a minimal act of evidence collection that amounts to no more than moving law enforcement's forwarded records from the DMV's file into the record of the APS hearing.

Therefore, when an AHO in an APS hearing introduces and admits "the documents that law enforcement duly forward[] to the DMV, which are routinely admitted into evidence at APS hearings, the [AHO] is merely collecting and developing evidence, not advocating for the DMV." (*Romane, supra*, 110 Cal.App.5th at p. 1018, review granted.) Because that is precisely what the AHO did in this case, he did not engage in advocacy. (*Ibid.*, review granted; cf. *Knudsen, supra*, at pp. 206–207 [explaining that because an AHO may collect and develop evidence, and because a prima facie case for license revocation is often established through the submission of documents, "scenarios can easily be envisioned in which the [AHO] adjudicates without actually acting as an advocate"].)

In sum, Rieman's due process right to an impartial adjudicator was not violated.[7] (*Romane, supra*, 110 Cal.App.5th at pp. 1016–1018, review granted; *Knudsen, supra*, 101 Cal.App.5th at p. 193.)

---

[7] Rieman argues the DMV is permitting AHO's to simply admit driving records, police reports, and DS 367 forms and then issue a decision. Rieman contends this process is an unofficial policy of permitting the AHO's to act as stealth advocates and results in drivers having their licenses improperly suspended. However, since *CDLA*, the DMV has been prohibited from having its AHO's act as advocates. Since July 2024, DMV regulations are now consistent with *CDLA*. Given *CDLA* and the 2024 regulations, simply because individuals who have been arrested for driving under the influence are having their licenses suspended does not mean that the DMV is violating due process rights. Moreover, if a driver has a reasonable basis for contesting a suspension, he should consider giving opening statements, testifying, presenting any relevant evidence, making objections, and/or giving a

## II. Jurisdiction to Conduct APS Hearing

### A. Parties' Arguments

Rieman argues that the APS hearing was void for two reasons. First, Rieman argues that the AHO lacked jurisdiction to conduct the hearing because he acted as an adjudicator and an investigator, prosecutor, or advocate in violation of Government Code section 11425.30. Second, Rieman argues that the APS hearing was conducted pursuant to either invalid underground regulations or regulations that had been invalidated by *CDLA*. Rieman argues that there is no evidence that the DMV properly adopted a new regulation between the time that *CDLA* invalidated the old regulations and the time that new regulations were adopted on July 1, 2024.

The DMV fails to address either of Rieman's arguments.

### B. Analysis

#### 1. No Violation of Government Code Section 11425.30

Government Code section 11425.30, which is part of the APA, provides in relevant part that a "person may not serve as presiding officer in an adjudicative proceeding [if the] person has served as investigator, prosecutor, or advocate in the proceeding or its preadjudicative stage." (*Id.*, subd. (a), (1).) These limitations on presiding officers have been legislatively exempted from APS hearings. Vehicle Code section 14112, subdivision (b) (section 14112(b)) provides that: "Subdivision (a) of Section 11425.30 of the Government Code does not apply to a proceeding for issuance, denial, revocation, or suspension of a driver's license pursuant to this division." However, *CDLA* concluded that section 14112(b) was "unconstitutional *to the extent* it permits the DMV to combine the *advocacy and adjudicatory* roles in a single APS hearing officer." (*CDLA, supra*, 77 Cal.App.5th at p. 533, fn. omitted, italics added.) Assuming without deciding that Rieman is correct that *CDLA* invalidated the entirety of section 14112(b), we are not

closing statement. Otherwise, the APS hearing will likely be resolved exactly as the hearing was in this case—upon the prima facie case established by routinely admitted documents.

11.

satisfied that Rieman has shown his APS hearing was conducted in violation of Government Code section 11425.30.

Although Rieman quotes Government Code section 11425.30's prohibitions against an adjudicator also acting as an investigator, advocate, and/or prosecutor, he does not actually explain how the AHO did anything other than improperly act as an advocate. However, we have already determined that the AHO did not engage in any acts of advocacy and thus, did not act as an advocate. For essentially the same reasons, we believe the AHO did not act as a prosecutor or as an investigator. The APS hearing was conducted at Rieman's request. The AHO did not bring any charges against Rieman or argue against him in order for him to be found guilty. Further, there is no indication that prior to the APS hearing the AHO engaged in any affirmative and systematic inquiries or examinations involving Reiman, such that we could conclude that the AHO engaged in clear acts of investigation.[8] The AHO merely admitted documents that are routinely admitted in all APS hearings and that were either already in the DMV's possession or forwarded to the DMV by law enforcement and then issued a decision. In the absence of a more developed argument, we cannot conclude that the AHO violated Government Code section 11425.30.

### 2. The APS Hearing Was Not Conducted Under Void Regulations

Section 1651, subdivision (a), provides that, if the DMV follows the procedures outlined for adopting regulations under the APA, the director of the DMV "may adopt and enforce rules and regulations as may be necessary to carry out the provisions of [the Vehicle C]ode relating to the [DMV]." "[A]gency regulations improperly adopted

---

[8] Neither Government Code section 11425.30 nor the APA define the term "investigator." However, the Merriam-Webster Online Dictionary defines "investigator" as simply "one who investigates .…" (<https://www.merriam-webster.com/dictionary/investigator> [as of Nov. 26, 2025], archived at <https://perma.cc/4B5P-QF6L>.) In turn, this dictionary defines "investigate" as either: (1) "to observe or study by close examination and systematic inquiry," or (2) "to make a systematic examination." (<https://www.merriam-webster.com/dictionary/investigate> [as of Nov. 26, 2025], archived at <https://perma.cc/QE83-BW28>.)

12.

outside the APA procedures are void as underground regulations." (*West Coast University, Inc. v. Board of Registered Nursing* (2022) 82 Cal.App.5th 624, 643; see *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 572–573.)

Rieman does not argue that any of the DMV's APS related rules and regulations were adopted in violation of the APA either prior to *CDLA* or after July 1, 2024. Instead, his argument focuses on the time between *CDLA* and July 1, 2024. Rieman appears to argue that because no regulations were adopted in this timeframe, we should presume that all APS hearings must have been performed pursuant to void underground regulations. Again, assuming without deciding that *CDLA* effectively invalidated the entirety of section 14112(b), as well as all corresponding APS-related rules and regulations, we are not persuaded by Rieman's arguments.

*CDLA* did not invalidate all rules and regulations relating to APS hearings. *CDLA* was limited to invalidating rules and regulations that permitted an individual to act in the dual roles of adjudicator and advocate because there would be a constitutionally intolerable risk of bias. (*CDLA, supra*, 77 Cal.App.5th at p. 532; see *Knudsen, supra*, 101 Cal.App.5th at p. 207.) Therefore, all other APS-related rules and regulations that did not involve such dual roles are unaffected by *CDLA*. Further, with respect to the roles of an AHO, when *CDLA* invalidated Vehicle Code section 14112(b), Government Code section 11425.30 remained in place and automatically operated to fill any regulatory gap that existed from the time of the *CDLA* decision to the time that new regulations were adopted on July 1, 2024. Through *CDLA* and Government Code section 11425.30, an AHO was prohibited from acting in certain specified dual roles. As explained above, Rieman has not demonstrated that the AHO acted in a dual capacity that violated *CDLA* or Government Code section 11425.30. Given the validity of the regulations unaffected by *CDLA*, the application of Government Code section 11425.30, and the injunction of *CDLA*, we detect no basis for concluding that Rieman's hearing was conducted pursuant

to invalid regulations.  Therefore, Rieman has failed to show that his APS hearing was invalid due to the DMV's application of a void regulation.

## III.  Sufficiency of the Evidence to Revoke Rieman's License

### A.  Parties' Arguments

Rieman argues that there was no reliable evidence that he drove with a BAC of 0.08 percent or more because the breath tests were not administered under the requirements of Title 17 of the California Code of Regulations (Title 17).  Specifically, Rieman argues that Title 17 required Horta to wait an additional 15 minutes from the time that the first breath test resulted in a "'Mouth Alcohol'" reading.  Reiman contends that because Horta failed to do so, Title 17 was violated and the second and third breath test results were invalid.  Rieman also argues that he was not required to object or rebut the presumption of reliability because the DMV never met its initial burden of showing that the breath test results were reliable.

The DMV argues in part that Rieman forfeited this issue because he did not object that the breath test results were unreliable.  The DMV also argues that it met its initial burden of showing that the two breath tests results of 0.11 percent were presumptively valid because Horta's DS 367 form attested that all requirements of Title 17 were observed and Horta's arrest report stated that he continuously observed Rieman for over 15 minutes.  The DMV argues that this evidence shows that Horta followed Title 17.

### B.  Legal Standards

#### 1.  Review of Petition for Writ of Mandate

In ruling on a petition for a writ of mandate following an order of license suspension, trial courts are to exercise their independent judgment  and determine ""'whether the weight of the evidence supported the administrative decision.'"" (*Lake, supra*, 16 Cal.4th at p. 456; accord, *Kazelka, supra*, 109 Cal.App.5th at p. 1247.)  On appeal, appellate courts review the record in order to determine whether the trial court's findings are supported by substantial evidence.  (*Lake, supra*, at p. 457; *Kazelka, supra*,

at p. 1247.) As part of the substantial evidence review, courts resolve all evidentiary conflicts and draw all reasonable inferences in favor of the trial court's decision. (*Lake, supra*, at p. 457; *Freitas v. Shiomoto* (2016) 3 Cal.App.5th 294, 300.) However, issues raised in the appeal that involve pure questions of law, such as the interpretation of statutes and regulations, are reviewed de novo. (*Freitas, supra*, at p. 300; *Manriquez v. Gourley* (2003) 105 Cal.App.4th 1227, 1233 (*Manriquez*).)

### 2. Breath Test Results

Breath test results that reveal a driver's BAC may be admitted and considered during an APS hearing. (*Lake, supra*, 16 Cal.4th at p 451.) Through operation of Evidence Code section 664, there is a rebuttable presumption that the BAC results recorded in official forms are valid and were obtained by following the relevant provisions of Title 17. (See *Gerwig, supra*, 61 Cal.App.5th at p. 66; *Evans, supra*, 41 Cal.App.5th at p. 1103; *Manriquez, supra*, 105 Cal.App.4th at pp. 1232–1233.) Title 17 establishes procedures for determining BAC levels from various types of samples, including breath samples. (*Gerwig, supra*, at p. 64, fn. 2.) The presumption of regularity and validity begins to operate once a standard DS 367 form is admitted, so long as the form contains an attestation by the officer that the breath test "'was administered pursuant to the requirements of Title 17 ….'" (*Evans, supra*, at p. 1103; see *Manriquez, supra*, at pp. 1232–1233.) The presumption can be rebutted if the driver affirmatively shows that one or more of the applicable requirements of Title 17 was not followed. (*Evans, supra*, at p. 1103; *Manriquez, supra*, at p. 1233; see *Gerwig, supra*, at p. 66.) If the driver produces such evidence, the burden shifts back to the DMV to prove that the test results are reliable despite the purported violation of Title 17. (*Gerwig, supra*, at p. 66; *Evans, supra*, at p. 1103; *Manriquez, supra*, at p. 1233.)

As relevant to this case, Title 17 mandates that "The breath sample shall be collected only after fifteen continuous minutes during which time the subject must not have ingested alcoholic beverages or other fluids, regurgitated, vomited, eaten, or

smoked." (Reg. 1221.1(b)(1); accord, *Evans, supra*, 41 Cal.App.5th at p. 1102.) The purpose of the 15-minute observation period is to ensure that the breath sample is not contaminated by mouth alcohol or regurgitation, which may skew the results of the breath test. (*People v. Vangelder* (2013) 58 Cal.4th 1, 33; *Manriquez, supra*, 105 Cal.App.4th at p. 1236, fn. 3.)

### C. Analysis

#### 1. Forfeiture

There is no dispute that Rieman made no objections at the APS hearing. Generally, the failure to object at an APS hearing to the admissibility of evidence will forfeit the issue on appeal. (*Jackson v. Department of Motor Vehicles* (1994) 22 Cal.App.4th 730, 738.) However, Rieman is not arguing that the breath tests results were inadmissible. Rather, he is arguing that the information regarding the breath tests was insufficient to meet the presumption of reliability and, thus, by themselves do not constitute substantial evidence that he drove with a BAC of 0.08 percent or more. That is, Rieman is challenging the sufficiency of the evidence. An argument that a judgment is not supported by substantial evidence is an "'obvious exception'" to the rule that points not urged at the trial level cannot be raised on appeal. (*People v. Butler* (2003) 31 Cal.4th 1119, 1126; accord, *Kaushansky v. Stonecraft Attorneys, APC* (2025) 109 Cal.App.5th 788, 798.) Therefore, Rieman did not forfeit his challenge to the sufficiency of the evidence.

#### 2. Sufficiency of the Evidence

Generally, the admission of a sworn DS 367 form is sufficient to trigger the presumption of reliability with respect to breath test results. (*Evans, supra*, 41 Cal.App.5th at p. 1103; *Manriquez, supra*, 105 Cal.App.4th at pp. 1232–1233.) A sworn DS 367 form was admitted in this case. The DS 367 form contained the following attestation that was signed by Horta: "I certify under penalty of perjury … that the above breath test sample results were obtained in the regular course of my duties. I further

16.

certify that I am qualified to operate this equipment and that the test was administered pursuant to the requirements of Title 17 ….." This attestation, along with Rieman's breath test results showing BAC's of 0.112 percent and 0.11 percent, was sufficient to invoke the presumption of reliability under Evidence Code section 664. (*Evans, supra*, at p. 1103; *Manriquez, supra*, at pp. 1232–1233.) In other words, contrary to Rieman's argument, the DMV through the DS 367 form (and as augmented by the unsworn arrest report), met its initial burden.

Because the DMV did in fact meet its initial burden, the burden shifted to Rieman to affirmatively demonstrate that the requirements of Title 17 were not followed. (*Evans, supra*, 41 Cal.App.5th at p. 1103; *Manriquez, supra*, 105 Cal.App.4th at p. 1233.) The record shows that Rieman called no witnesses, introduced no evidence, and made no arguments to the AHO regarding Title 17 or any other matter. Therefore, Rieman failed to affirmatively demonstrate noncompliance with Title 17 and, thus, failed to rebut the presumption of regularity and validity. (*Evans, supra*, at p. 1103; *Manriquez, supra*, at p. 1233.)

Rieman argues that the attached breath test results on their face demonstrate that Title 17's 15-minute observation period requirement was not met. We disagree. Regulation 1221.1(b)(1) establishes the procedure for collecting a breath sample, it does not purport to interpret breath tests results or direct how an officer is to proceed depending on the results of a breath test. As quoted above, regulation 1221.1(b)(1) mandates only one 15-minute observation period by the officer in which time the driver does not smoke, vomit, or ingest anything. (*Ibid.*; *Evans, supra*, 41 Cal.App.5th at p. 1102.) Regulation 1221.1(b)(1) does not use the term "mouth alcohol" and identifies no circumstances in which the officer must wait an additional 15 minutes before conducting further tests. Therefore, Horta's attestation that he complied with Title 17, as well as his arrest report in which he stated that he waited more than 15 minutes before

administering a breath test and did not observe Rieman smoking, vomiting, or ingesting anything, demonstrated compliance with the letter of Title 17.

Rieman wishes us to infer that because a "Mouth Alcohol" reading was detected, Title 17 required Horta to wait an additional 15 minutes before administering other tests. However, we detect no basis for such an inference. Again, regulation 1221.1(b)(1) directs how a breath sample is to be collected and only provides for one observation period before administering a breath test. Regulation 1221.1(b)(1) does not explain what is to be done when an officer observes a driver for more than 15 minutes, administers the breath test, and, despite the driver not smoking, vomiting, or ingesting liquids or solids during the 15-minute observation period, the breath test machine nevertheless provides a reading of mouth alcohol. It may be that officers are trained to wait an additional 15 minutes before taking another sample if there is a previous mouth alcohol reading. If that is the case, the presumption of regularity and validity could be rebutted. Or it may be that officers are trained in such circumstances that an additional full 15-minute observation period is unnecessary due to the previous 15-minute period. If that is the case, the presumption could not be rebutted. These possibilities illustrate the importance of a driver *affirmatively demonstrating* that Title 17's requirements were not met (once the presumption of regularity and validity has attached). Simply put, additional evidence is necessary to determine the effect of a situation that is related to, but outside the language of, regulation 1221.1(b)(1). Because the evidence shows that Horta followed the letter of regulation 1221.1(b)(1) when he administered the breath tests, it is not enough for Rieman to simply argue regulation 1221.1(b)(1) was not followed.

Rieman cites a number of cases that discuss mouth alcohol and regulation 1221.1(b)(1) or its predecessor, California Code of Regulations, title 17, former section 1219.3. However, most of these cases merely indicate that the purpose of the 15-minute observation period is to ensure that the breath sample is not contaminated with mouth alcohol (e.g. *Manriquez, supra*, 105 Cal.App.4th at p. 1236, fn. 3), or involve

18.

instances in which an officer did not wait 15 minutes before administering a breath test (e.g. *Roze v. Department of Motor Vehicles* (2006) 141 Cal.App.4th 1176, 1188 [officer performed a breath test nine minutes after the driver spat out chewing gum]). Only one of the cited cases, *Robertson v. Zolin* (1996) 44 Cal.App.4th 147 (*Robertson*), involves a situation similar to the case at bar.

In *Robertson*, a suspected drunk driver was administered a series of three breath tests between 2:19 a.m. and 2:22 a.m. (*Robertson, supra*, 44 Cal.App.4th at p. 150.) The first test indicated a BAC of 0.18 percent, the second result read "'.XX,'" and the third test indicated a BAC of 0.18 percent. (*Ibid.*) At an APS hearing, the DMV introduced the officer's sworn statement, which included the three breath test results. (*Ibid.*) The driver responded by introducing a computer-generated document that reflected information about breath test results. (*Ibid.*) According to the document, a reading of "'.XX'" meant "'Mouth Alc Flag'" and was an "'invalid'" result. (*Ibid.*) The AHO found that the driver drove with a BAC of greater than 0.08 percent. (*Ibid.*) However, in the mandamus proceeding, the trial court relied on the computer-generated document's notations regarding an .XX reading to conclude that the driver had sufficiently rebutted the presumption of regularity and validity. (*Id.* at pp. 151–152.) Because the DMV did not introduce any other evidence regarding reliability, the court reversed the driver's suspension. (*Id.* at p. 153.) In its review of the matter, the Court of Appeal noted that there was a dispute regarding the meaning of the computer-generated document and whether the document merely meant that the second breath test result was invalid or whether it meant that the second result cast doubt on all three breath test results. (*Id.* at p. 152.) Ultimately, the Court of Appeal held that substantial evidence supported the trial court's conclusion:

> "As we have indicated, the primary significance of the [computer-generated document] lay not in its conclusions about the validity of the test results but in its explanation of mouth alcohol as the cause of the second test reading. The very form on which [the o]fficer recorded the test results

indicates the presence of mouth alcohol requires the officer to stop the test and recommence a 15-minute observation of the driver. (See generally, Cal. Code Regs. tit. 17, [former] § 1219.3.) Yet, [the officer] obtained a third sample from Robertson immediately after the second one activated the mouth-alcohol flag. [The officer] also overlooked the form's directive that a third breath sample should be taken 'only if 2 breath results do not agree with 0.02 %.' While these facts do not affirmatively establish the test results were unreliable, they constitute sufficient evidence to support the trial court's finding official testing standards were not observed. As the DMV offered no evidence indicating the test results were reliable despite this deviation, the trial court properly granted Robertson's petition for a writ of mandate." (*Robertson, supra*, 44 Cal.App.4th at pp. 152–153.)

Admittedly, the facts of this case are close to *Robertson*. However, we are not convinced that *Robertson* controls. First, unlike *Robertson*, there are no forms or documents in the record of this case that contain an express requirement to wait an additional 15 minutes before administering subsequent breath tests if a breath test reads mouth alcohol. Second, and relatedly, the officer in *Robertson* violated two protocols regarding breath samples from the form he was using: not waiting 15 minutes after the .XX reading to administer a new test and administering a third test without the criteria for a third test being met. (*Robertson, supra*, 44 Cal.App.4th at pp. 152–153.) Here, there is no evidence that shows Horta violated any protocols. Third, it appears that the "'.XX'" reading in *Robertson* meant "'Mouth Alc Flag.'" (*Id.* at p. 150.) However, the breath testing device in this case did not read .XX, it expressly read "mouth alcohol." The fact that the two cases have different readings for mouth alcohol shows that two different breath testing devices are involved. It is unclear why practices and notations from a breath test machine that was utilized in 1993 should apply to a different and newer breath test machine that was utilized 29 years later in 2022. Fourth, in *Robertson*, after the DMV admitted the breath tests results (including the .XX result) and established the presumption of regularity and validity, the driver met his burden of rebuttal by affirmatively admitting the computer-generated document and challenging the reliability of the breath results based on the document's explanation of the .XX reading. (*Id.* at

20.

pp. 151–152.) In contrast, Rieman submitted no evidence regarding the "Mouth Alcohol" reading or what the appropriate procedures are when such a reading is present, particularly when a 15-minute observation period has already been followed. Indeed, Rieman made no arguments and introduced no evidence at his APS hearing. Thus, unlike *Robertson*, Rieman did nothing to sufficiently rebut the presumption of regularity and validity. For these reasons, *Robertson* does not aid Rieman.

In sum, Horta's arrest report and DS 367 form constitute substantial evidence that the breath tests were regularly and validly performed and that Rieman drove with a BAC of more than 0.08 percent. Rieman failed to meet his burden of rebutting the presumption of regularity and validity and failed to show that the trial court's findings of compliance with Title 17 was not supported by substantial evidence.

## DISPOSITION

The trial court's order denying Rieman's petition for writ of mandate is affirmed. DMV is entitled to its costs on appeal.


MEEHAN, J.

WE CONCUR:


HILL, P. J.


DESANTOS, J.

21.