Filed 4/20/26; Certified for Publication 5/6/26 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JAMES WILLIAM MYERS,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DEPARTMENT OF MOTOR VEHICLES et al.,<br><br>Defendants and Appellants. | F089241<br><br>(Super. Ct. No. BCV-24-100651)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County. Thomas S. Clark, Judge.

Rob Bonta, Attorney General, Chris A. Knudsen, Assistant Attorney General, Gary S. Balekjian and Narek Shahmoradian, Deputy Attorneys General, for Defendants and Appellants.

Middlebrook & Associates, Richard O. Middlebrook, and Gabrielle Burnett, for Plaintiff and Respondent.

-ooOoo-

The Department of Motor Vehicles (DMV) suspended James William Myers's driver's license for a period of four months for driving with a blood-alcohol concentration (BAC) of 0.08 percent or more. (Veh. Code, § 13353.2.)[1] Myers appealed the suspension and an administrative per se (APS) hearing was held. An administrative hearing officer (AHO) upheld the suspension, concluding that the arresting officer complied with all laws and regulations, requiring a 15-minute period of continuous observation before administering a chemical breath test (Cal. Code Regs., tit. 17, § 1221.1 (title 17)).[2, 3]

The trial court overturned the suspension and granted Myers's petition for writ of mandate on the ground that the observation criterion under title 17 was not satisfied based on video evidence from an arresting officer's body worn camera. On appeal, the DMV contends (1) the court erred in concluding the video evidence rebutted the presumption that the arresting officer complied with the 15-minute observation period before administering the first chemical breath test; and (2) even assuming the officer did not comply with title 17, Myers did not establish the violation resulted in an inaccurate test result because other evidence of intoxication corroborated the chemical breath test. We affirm.

## PROCEDURAL BACKGROUND

On October 5, 2023, Myers was arrested for driving under the influence of alcohol. The arresting officer issued Myers a Suspension Order and Temporary Driver License, suspending his driver's license effective 30 days after October 5, 2023.

---

[1]     All further statutory references are to the Vehicle Code unless otherwise noted.

[2]     All further references to regulations are to title 17 of the California Code of Regulations, unless otherwise noted, and are denoted by the section number of the regulation.

[3]     Title 17, section 1221.1, subdivision (b)(1) provides: "The breath sample shall be collected only after [15] continuous minutes during which time the subject must not have ingested alcoholic beverages or other fluids, regurgitated, vomited, eaten, or smoked."

On October 18, 2023, the DMV issued a stay in suspension of Myers's driver's license pending the outcome of the APS hearing.

On February 7, 2024, an APS hearing took place.

On February 14, 2024, the AHO upheld suspension of Myers's driver's license from February 23 through June 22, 2024.

On February 26, 2024, Myers filed a petition for writ of mandate and requested an immediate stay in the suspension of Myers's driver's license.

On March 8, 2024, the trial court issued an order granting a stay in the suspension of Myers's driver's license pending determination of his petition for writ of mandate.

On April 29, 2024, the DMV filed an answer to Myers's petition for writ of mandate.

On August 26, 2024, Myers filed an opening brief in support of his petition for writ of mandate.

On September 23, 2024, the DMV filed a brief in opposition.

On October 7, 2024, Myers filed a reply in response to the DMV's opposition.

On October 25, 2024, a hearing on Myers's petition for writ of mandate was held.

On October 31, 2024, the trial court ruled in Myers's favor, granted the petition, and issued a peremptory writ of mandate ordering the DMV to set aside and revoke their order suspending Myers's driving privilege.

## FACTUAL BACKGROUND

On October 5, 2023, at 11:22 p.m., Officer Kyle Goodrich was on foot patrol in Pismo Beach. Goodrich observed a car driving the wrong way on a one-way street in violation of section 21657. Goodrich shined his light at the driver, Myers, and advised him to pull over to the side of the road.

Goodrich observed Myers had a nightclub wristband on his right wrist. Goodrich also noticed Myers had slurred speech and that there was an odor of alcohol coming from his breath. Myers admitted he consumed alcohol that night. After completing the

3.

horizontal gaze nystagmus test, Goodrich believed Myers was impaired and asked him to step out of the car. Myers performed poorly on field sobriety tests (the one-legged stand and the walk and turn). Myers also completed another horizonal gaze nystagmus test and did not pass. Preliminary alcohol screening (PAS) tests indicated that Myers had a BAC of 0.160 percent at 11:39 p.m. and 0.162 percent at 11:42 p.m.[4] Goodrich arrested Myers at approximately 11:43 p.m. for driving while under the influence of alcohol.

Goodrich walked across the street to move his patrol car. Myers gave Officer Bradley Pullen, another officer on the scene, permission to move his car. Myers was searched and placed in the back of Goodrich's patrol car. Myers's car was parked nearby. Pullen ensured Myers's car was locked.

Goodrich informed Myers about implied consent at 11:45 p.m. Myers chose to have a breath test at approximately 11:49 p.m. Myers agreed to have Pullen park his car for him. Goodrich instructed Myers to place his feet inside the patrol car, told him he needed to "do a couple things," and closed the door at about 11:50 p.m. Myers was alone in Goodrich's patrol car with the door closed.

On October 6, 2023, at approximately 12:04 a.m., Myers was again alone in the back of Goodrich's patrol car with the door shut. Goodrich then opened the back passenger side door and explained how to provide a chemical breath sample.

Two chemical breath tests were administered at the police station. Myers's first chemical breath test resulted in a 0.15 percent BAC at approximately 12:04 a.m. The second chemical breath test resulted in a 0.16 percent BAC at 12:08 a.m.

---

[4]     A PAS is an investigative tool used to determine whether there is reasonable cause to believe a person was driving while under the influence. (§ 23612, subd. (h).) A PAS test is distinguishable from a chemical breath test which is administered after establishing cause for an arrest, which can be referred to as " ' "evidentiary" ' " testing. (*People v. Vangelder* (2013) 58 Cal.4th 1, 5, fn. 1.)

Goodrich stated that he had continuously observed Myers for 15 minutes and certified he complied with title 17, section 1221.1, subdivision (b)(1) and did not observe Myers ingest any fluids, eat, smoke, or vomit prior to administering the test.

***APS Hearing and Decision***

On February 7, 2024, an APS hearing was held.  The AHO explained that there were three issues for the hearing:  (1) did Goodrich have reasonable cause to believe that Myers was driving under the influence in violation of sections 23152 or 23153; (2) was Myers lawfully arrested; and (3) was Myers driving with a BAC of 0.08 percent or more.  The exhibits included Goodrich's sworn driving under the influence arrest investigation report (form DS 367), Myers's chemical breath test results, Goodrich's arrest report and supplemental report, and Myers's driving record.

The AHO asked if there were any objections.  Myers's counsel objected on the grounds that it was a due process violation under both the California and United States Constitutions to have a single hearing officer act as both the presenter of evidence and as the trier of fact.  He further objected on the basis that the hearing officer could not act as an advocate for the DMV, and the exhibits themselves should be the only evidence relied upon.  Counsel made several objections based on the accuracy and reliability of the exhibits.  He also made hearsay and lack of foundation objections to the exhibits.  The AHO overruled all objections and admitted the exhibits into evidence.

Myers's counsel introduced video footage from Goodrich and Pullen's body-worn cameras on the night of the arrest without objection.  He argued the video evidence showed a violation of the 15-minute continuous observation period.  Myers's counsel sought review of the video evidence from the time of Myers's arrest on October 5, 2023 at 11:43 p.m., as indicated on the DS 367, and the first chemical breath test at 12:04 a.m. the following day.

The AHO issued a written decision upholding the suspension of Myers's driver's license.  The AHO determined that Myers was lawfully stopped, that reasonable cause

existed for Myers's arrest, and that Myers drove with a BAC of 0.08 percent or more. The AHO found "counsel did not provide any evidence to indicate there was a [t]itle 17 violation." The AHO decided the chemical breath test results were admissible "based on the lack of sufficient evidence to rebut the [breath] test results …." The AHO noted that the DMV's evidence contained a signed certification (DS 367) indicating the chemical breath test was administered in compliance with the 15-minute observation rule and title 17. (Evid. Code, § 664 ["It is presumed that official duty has been regularly performed"].)

### Petition for Writ of Mandate and the Trial Court's Ruling

On February 26, 2024, Myers filed a petition for writ of mandate through which he sought to set aside the suspension of his license. (Veh. Code, § 13559, subd. (a); Code Civ. Proc., § 1094.5.) He also requested an immediate stay of the suspension of his driving privilege pending the outcome of the petition. The trial court stayed the suspension of Myers's license pending the outcome of his petition for writ of mandate.

Myers argued in pertinent part that Goodrich did not comply with title 17. He maintained the presumption was rebutted by the video evidence from Goodrich and Pullen's body-worn cameras, which showed that Goodrich did not observe Myers for a continuous 15-minute period before administering the first chemical breath test. Myers argued that because the DMV did not meet its burden to establish the reliability of the chemical breath tests, the court should issue the writ of mandate setting aside the suspension of his driver's license.

The DMV argued Myers's argument was speculative and that title 17 does not require the officer to have his eyes on the motorist for the entire 15-minute period. Rather, the purpose is to ensure reliability of breath test results by requiring the motorist to " 'not have ingested alcoholic beverages or other fluids, regurgitated, vomited, eaten, or smoked.' "

6.

At the hearing on Myers's petition for writ of mandate, the matter was argued by counsel and submitted.[5]  The DMV offered no additional evidence other than the sworn statement to prove compliance with title 17.

The trial court found, in relevant part, that Myers successfully rebutted the presumption of duty regularly performed under Evidence Code section 664 through video evidence, which showed Goodrich did not continuously observe Myers for the 15-minute observation period required under title 17.  The court relied on *Evans v. Gordon* (2019) 41 Cal.App.5th 1094 (*Evans*) and noted that while the DMV was "not required to prove continuous eyeball observation, the video does establish that, at times, [Goodrich] was not even in the vicinity and could not have been providing the [t]itle 17 mandated observation."  The court further reasoned that unlike *Evans*, Goodrich did not testify, and no other evidence was presented to counter the video.  Thus, the court ruled that the chemical breath tests should not have been admitted.  The DMV failed to meet its burden of proving Myers was driving with a BAC of 0.08 percent or above.  The court granted the writ of mandate overturning the administrative decision to suspend Myers's driving privilege.

## DISCUSSION

### I. Sufficiency of the Evidence to Rebut the Presumption that Goodrich Complied with Title 17

#### A.    *Parties' Arguments*

The DMV argues the trial court erred when it concluded Myers successfully rebutted the Evidence Code section 664 presumption that Goodrich complied with the requirements of title 17 because no affirmative evidence undermined the reliability of the breath test results.  The DMV disputes that the video evidence demonstrates

---

[5]    We are not privy to the exact arguments made by counsel.  A transcript of the hearing is not a part of the appellate record.

noncompliance with the 15-minute observation period.  Instead the DMV contends no other evidence raised a reasonable inference that Myers's breath tests were unreliable, particularly nothing showing that he ingested alcoholic beverages or other fluids, regurgitated, vomited, ate, or smoked from the time of his arrest to the time his breath samples were taken.  Even assuming a title 17 violation, the DMV contends that circumstantial evidence showed Myers drove with a BAC of above 0.08 percent.

Myers responds the burden was on the DMV to prove the reliability of the tests, and substantial evidence supports the trial court findings that Goodrich did not continuously observe Myers for 15 minutes prior to administering the first chemical breath test.  Myers further argues the DMV waived its argument regarding the timing of the first chemical breath test and its contention regarding the use of circumstantial evidence to show Myers's BAC was above 0.08 percent by not raising these claims below.  Nonetheless, Myers maintains this court may not rely on circumstantial evidence in conjunction with the chemical breath tests to support the theory that Myers's BAC was above 0.08 percent because the argument is speculative and asks  this court to reinterpret the evidence.

### B.    The Law

#### 1.    APS Hearing Procedure

License suspensions are governed by an administrative procedure called the "administrative per se" law.  (*Lake v. Reed* (1997) 16 Cal.4th 448, 455 (*Lake*).)  It follows that the DMV must immediately suspend the driver's license of a motorist who is driving with a BAC of 0.08 percent or more.  (§ 13353.2, subd. (a)(1); *Coffey v. Shiomoto* (2015) 60 Cal.4th 1198, 1207 (*Coffey*).)  Motorists have a right to request an APS hearing before the suspension of their driving privilege occurs, which is separate from the DMV's automatic internal review, and the hearing is usually held before an AHO.  (*Lake*, at pp. 455–456; §§ 13353.2, subd. (c), 13353.3, subd. (a), 13558, subd. (a).)  At the APS hearing, an AHO determines whether an arresting officer had reasonable cause to believe

8.

the driver was driving, whether the driver was lawfully arrested, and whether the driver was driving with a BAC of 0.08 percent or more. (*Evans*, *supra*, 41 Cal.App.5th at p. 1101; § 13558, subd. (c)(2).) If the AHO finds that the issues were proven by a preponderance of the evidence, the driver's license of the motorist will be suspended for a period of four months if the motorist's driving record is clean. (*Evans*, at p. 1101; § 13353.3, subd. (b)(1)).

At an APS hearing, the AHO "shall consider its official records and may receive sworn testimony" as evidence. (§ 14104.7.) The "technical rules relating to evidence" do not apply at an APS hearing, and the AHO "shall admit any relevant evidence that 'is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs.' " (Gov. Code, § 11513, subd. (c); *Evans*, *supra*, 41 Cal.App.5th at p. 1102.)

### 2. Breath Test Results

Breath test results on official forms may be admitted during an APS hearing and may be considered as proof by a preponderance of the evidence that a motorist was driving with a BAC of 0.08 percent or more. (*Lake*, *supra*, 16 Cal.4th at p. 451; *Manriquez v. Gourley* (2003) 105 Cal.App.4th 1227, 1232 (*Manriquez*).) This is because the provisions of title 17 regulate the collection and testing of breath samples for determination of alcohol concentration. (Tit. 17, § 1215 et seq.) Evidence Code section 664 creates a rebuttable presumption that an "official duty has been regularly performed." Evidence Code section 1280 establishes a hearsay exception for records made by public employees. (*Shannon v. Gourley* (2002) 103 Cal.App.4th 60, 65.) Thus, the recorded chemical blood-alcohol test results on official forms are presumptively valid, obtained following the regulations and guidelines of title 17, and the DMV is not required to present additional evidence. (*Manriquez*, at p. 1232; *Evans, supra,* 41 Cal.App.5th at p. 1103.) Under the presumption, "the officer's sworn statement that the breath-testing device recorded a certain blood-alcohol level is sufficient to establish the

9.

foundation, even without testimony at the hearing establishing the reliability of the test." (*Manriquez*, at p. 1233.)

Once the DMV presents evidence to establish a prima facie case, the burden shifts to the motorist to produce affirmative evidence of improper performance. (*Petricka v. Department of Motor Vehicles* (2001) 89 Cal.App.4th 1341, 1348.) Such a showing must demonstrate a reasonable basis for an interference that the procedures were not properly followed and cannot rest on mere speculation. (*Ibid.*) If such an affirmative showing is made by the motorist that one or more of the requirements of title 17 were not observed, the burden then shifts back to the DMV to prove the reliability of the test despite the deviation. (*Manriquez*, *supra*, 105 Cal.App.4th at p. 1233; *Evans*, *supra*, 41 Cal.App.5th at p. 1103; *Baker v. Gourley* (2000) 81 Cal.App.4th 1167, 1173.)

Under title 17, there is a requirement that "[t]he breath sample shall be collected only after [15] continuous minutes during which time the subject must not have ingested alcoholic beverages or other fluids, regurgitated, vomited, eaten, or smoked." (Tit. 17, § 1221.1(b)(1); *Evans*, *supra*, 41 Cal.App.5th at pp. 1102–1103.) The purpose of the 15-minute observation period is to ensure that the breath sample is not contaminated by mouth alcohol or regurgitation, which may skew the results of the breath test. (*Manriquez*, *supra*, 105 Cal.App.4th at p. 1236, fn. 3.) Noncompliance with title 17 "goes only to the weight of the evidence, not its admissibility." (*People v. Williams* (2002) 28 Cal.4th 408, 414.)

### 3. Review of Petition for Writ of Mandate

In ruling on a petition for a writ of mandate following an order of license suspension by the DMV at an APS hearing, trial courts are required to exercise their independent judgment and determine " ' "whether the weight of the evidence supported the administrative decision." ' " (*Lake*, *supra*, 16 Cal.4th at pp. 456–457.) The appellate court reviews the record on appeal to determine whether the trial court's findings are supported by substantial evidence. (*Id.* at p. 457.) In deciding whether there is

10.

substantial evidence, the reviewing court resolves all evidentiary conflicts and draws all reasonable inferences in favor of the trial court's decision. (*Ibid*.; see *Freitas v. Shiomoto* (2016) 3 Cal.App.5th 294, 300 (*Freitas*).) To the extent the appeal involves a question of law or interpretation of a regulation, the appellate court reviews those questions de novo. (*Freitas*, at p. 300; *Manriquez, supra*, 105 Cal.App.4th at p. 1233.)

The trial court made a factual finding after viewing video evidence that Goodrich failed to observe Myers for 15 continuous minutes before administering the first chemical breath test as required by title 17. We review the court's finding for substantial evidence and the exclusion of the chemical breath test results for abuse of discretion.

### C.   *Substantial Evidence Supports the Trial Court's Conclusion*

The first issue we must resolve is whether the video evidence from the officer's body-worn camera provided substantial evidence to rebut the presumption that the reported chemical breath test results were reliable in compliance with title 17. The record contains a sworn DS 367 form signed by Goodrich, which attested the chemical breath test results of 0.160 and 0.162 percent were administered pursuant to the requirements of title 17. The sworn DS 367 form is sufficient to trigger the presumption of reliability under Evidence Code section 664. (*Evans, supra*, 41 Cal.App.5th at p. 1103; *Manriquez, supra*, 105 Cal.App.4th at pp. 1232–1233.) The burden then shifted to Myers to affirmatively demonstrate noncompliance. (*Evans*, at p. 1103.)

The video evidence from Goodrich's body-worn camera shows that Myers was not continuously observed for 15 minutes prior to administering the first chemical breath test. Goodrich arrested Myers at approximately 11:43 p.m., on October 5, 2023. Myers agreed to provide a chemical breath test at approximately 11:49 p.m. At about 11:50 p.m., Goodrich closed the door to his patrol car leaving Myers alone inside. On October 6, 2023, at about 12:04 a.m., Myers was again alone inside Goodrich's patrol car with the doors shut. No one else was present. At approximately 12:04 a.m., Myers provided his first chemical breath test. During the period of about 14 minutes that lapsed, the video

evidence showed Myers alone in the back of Goodrich's patrol car with the doors shut on two occasions.[6]

The DMV argues the trial court got the facts wrong. Specifically, the DMV argues that the court misconstrued the video evidence in the record, confused the officers and times, and therefore came to an erroneous conclusion that Goodrich was not continuously in Myers's vicinity during the 15-minute observation period. The record does not support this view.

The trial court stated the video evidence provided an affirmative showing Myers "was not observed for the required 15 minute period" and "at times, the officer was not even in the vicinity and could not have been providing the [t]itle 17 mandated observation." The court's conclusion does not reflect an incorrect identification of officers and times. The court rightly found that the video evidence showed Goodrich was not in Myers's vicinity on two occasions during the approximate 15-minute observation period.

While we agree with the DMV that it appears Pullen retrieved Myers's belongings and parked his car, this argument fails to persuade us that there was compliance with title 17. Two videos showed Goodrich shutting the door to his patrol car, leaving Myers alone inside during the observation period. This footage offered substantial evidence to rebut the presumption that the BAC reported in the documents presented by the DMV could be relied upon.

---

[6]     We note that the DMV argues for the first time on appeal that the initial chemical breath test took place on October 6, 2023, at 12:05 a.m. Even if we were to accept that the first chemical breath test took place at 12:05 a.m., we would still find sufficient evidence to rebut the presumption that Goodrich complied with title 17 because the video evidence shows Goodrich did not continuously observe Myers for the approximate 15 minutes prior to administration of the first test. Thus, we need not address Myers's argument regarding waiver and the exact time of the first chemical breath test because we find the video evidence shows lack of compliance with title 17.

12.

The DMV argues that an officer is not required to keep his eyes directly on the motorist but may rely on his senses to ensure that the motorist did not eat, drink, smoke, regurgitate, or vomit. (*Manriquez*, *supra*, 105 Cal.App.4th at p. 1236 [observation period satisfied where an officer may perceive a subject has eaten, drank, smoked, vomited or regurgitated by sound or smell and the perception by senses other than sight, even if officer did not maintain direct visual contact the entire time].) While an officer is not required to have "direct and unbroken eye contact for the 15-minute period," the officer must be in the vicinity and use "other means of uninterrupted observation" to determine whether the motorist ate, drank, smoked, regurgitated, or vomited. (*Id*. at p. 1238.) This was not done here.

Substantial evidence supports the trial court's finding that the video evidence rebutted the presumption by showing Myers was not continuously observed for 15 minutes before obtaining the first chemical breath test.

### D.      *Reliability of the Test Results*

The DMV argues there is no evidence showing the chemical breath test results were unreliable. The DMV therefore maintains that even if there was technical noncompliance with a regulatory standard, the test results should be admitted because there is nothing to rebut the presumption of reliability. The DMV cites *Gerwig v. Gordon* (2021) 61 Cal.App.5th 59, 71 (*Gerwig*) for the proposition that the reliability of the test is the paramount concern when rebutting the Evidence Code presumption.

In *Gerwig*, the motorist argued the phlebotomist dispatched to draw his blood was not in compliance with certain state regulations that govern blood test procedures, for example, the phlebotomist was functionally unsupervised and the manual that had been provided to the phlebotomist had not been approved by a physician and surgeon. (*Gerwig*, *supra*, 61 Cal.App.5th at p. 63.) The motorist argued that *any* evidence of noncompliance with the regulations, even a technical violation, was enough to rebut the

presumption and require the DMV to prove the reliability of the test results. (*Id.* at pp. 64–65.)

The *Gerwig* court disagreed. It held there must be a nexus between the affirmative showing of a regulatory violation and the reliability of the test results. (*Gerwig*, *supra*, 61 Cal.App.5th at p. 72.) The court found the title 17 violations did not show any errors of practice or procedure by the phlebotomist with respect to the collection or testing of the motorist's blood sample. (*Id.* at p. 70.) The violations only implicated the appropriate supervision and the proper conduct of a blood draw, which the court found "too tenuous" to cast doubt on the reliability of the blood test results. (*Id.* at pp. 68–69.) Thus, the *Gerwig* court found that *any* violation is not sufficient in and of itself to cast doubt on the reliability of the test results and thereby rebut the presumption under Evidence Code section 664. (*Gerwig*, at p. 72; see *Baker*, *supra*, 81 Cal.App.4th at p. 1174 [speculation is insufficient to support a reasonable inference that the integrity of the sample was compromised].)

Unlike *Gerwig*, the failure to continuously observe Myers for 15 minutes prior to the administration of the first chemical breath test goes directly to the reliability of the results. This is not a mere technical noncompliance. A violation of the observation period is directly related to its purpose: to ensure that the breath sample is not contaminated with mouth alcohol or other foreign substances that could potentially influence the test results. (See, e.g., *Manriquez*, *supra*, 105 Cal.App.4th at p. 1236, fn. 3.) The fact that Goodrich did not continuously observe Myers for 15 minutes before testing cast doubt on the integrity of the test.

The DMV argues that without evidence of foreign matter in Myers's mouth, the chemical breath tests should be deemed reliable. However, this argument illustrates a misunderstanding of the shifting burden of proof in APS hearing challenges. In this regard, "[t]he burden imposed upon the licensee of rebutting the presumption favoring the reliability of blood-alcohol tests does not entail the marshalling of complex scientific

14.

evidence.… [W]hat is actually presumed under Evidence Code 664 is *compliance with statutory and regulatory standards*, which in turn gives rise to an inference of reliability. If the licensee shows, through cross-examination of the officer or by the introduction of affirmative evidence, that official standards were in any respect not observed, the burden shifts to the [DMV] to prove that the test was reliable despite the violation." (*Davenport v. Department of Motor Vehicles* (1992) 6 Cal.App.4th 133, 144.)

In *Najera v. Shiomoto* (2015) 241 Cal.App.4th 173, this court concluded the presumption that the motorist's blood test results were reliable was rebutted by expert testimony that the blood test data collected from only one column of a gas chromatograph did not establish the presence or the concentration of alcohol without confirmation by data from the second column. (*Id*. at pp. 181–182.) While the DMV made several arguments on appeal that the motorist's blood test results could be confirmed without data from the second column, this court held that once the burden shifted, it was up to the DMV, not the motorist, to present evidence of the second-column data. (*Id*. at pp. 183–184.) Because the DMV presented no additional evidence, this court held that substantial evidence supported the trial court's conclusion that the equipment and methods were used incorrectly to conduct the motorist's blood test. (*Id*. at p. 184; accord, *Freitas*, *supra*, 3 Cal.App.5th at pp. 301–302 [the motorist rebutted the presumption by showing that the testing apparatus was improperly employed when his sample was tested, thus shifting the burden back to the DMV to prove compliance with the regulations].)

Myers presented video evidence from body worn camera footage of his arrest that showed Goodrich left him alone in his patrol car on two occasions during the approximate 15-minute period of continuous observation. The burden then shifted to the DMV to prove the test was reliable despite this violation. (*Manriquez*, *supra*, 105 Cal.App.4th at p. 1233.) The DMV failed to meet their burden. (C.f. *Evans*, *supra*, 41 Cal.App.5th at p. 1104 [substantial evidence showed compliance with title 17 by way of

15.

evidence in the form of the arresting officer's testimony, dispatch log, and the sworn statement in the DS 367 form].)

The DMV asserts the video evidence in and of itself is insufficient to demonstrate a violation that gives rise to a reasonable inference that the test results are unreliable. We disagree. The video objectively captures the sequence of events. A video can be worth "a thousand" words and does not suffer from bias or a fading memory. (See, e.g., *Taylor v. County of Los Angeles* (2020) 50 Cal.App.5th 205, 213 [a "camera's video can be unbiased, unblinking, unchanging, and clear" and is "far superior" to a witness's testimony].) Because the evidence shows official testing standards were not followed, the trial court could reasonably question the accuracy of Myers's test results when weighing the evidence presented.

The trial court did not abuse its discretion in excluding the chemical breath test results. The court could reasonably conclude the chemical breath test results may have been skewed by Myers's activity during the time he sat alone in the back of the patrol car. Absent the chemical breath test results, the court properly found insufficient evidence to support a finding that Myers was driving a motor vehicle with a BAC above 0.08 percent.[7]

### E.    *Circumstantial Evidence*

Finally, the DMV argues that even assuming a title 17 violation occurred, the circumstantial evidence established the reliability of the test results, and that Myers was driving with a prohibited BAC. The DMV points to Myers's PAS test results, the fact that he drove the wrong way on the road, and his poor performance on field sobriety tests.

---

[7]    Our conclusion is in line with *Gerwig*'s holding that a motorist may rebut the presumption only when the integrity of the test is called into question. (*Gerwig, supra*, 61 Cal.App.5th at p. 62.) It does not dispense with the requirement that the regulatory violation have a reasonable connection to the reliability of the test. (*Id*. at p. 72.)

### 1. Forfeiture

" 'The traditional rule is that "a party must raise an issue in the trial court if they would like appellate review." ' " (*Kazelka v. Department of Motor Vehicles* (2025) 109 Cal.App.5th 1239, 1254.) However, a new theory raising a pure question of law on undisputed facts can be raised for the first time on appeal. (*Ramirez v. Department of Motor Vehicles* (2023) 88 Cal.App.5th 1313, 1335.)

The DMV asks us for the first time to consider circumstantial evidence to support the chemical breath test results despite noncompliance with title 17. The DMV did not argue below that circumstantial evidence in conjunction with the chemical breath test results provided sufficient evidence that Myers was driving with a BAC above 0.08 percent. Additionally, while the AHO made a finding that Myers's poor performance on field sobriety tests and "objective symptoms of intoxication" supported the conclusion that his BAC was above 0.08 percent, the AHO's conclusion was in the context of determining whether the PAS test results should be admitted, not the chemical breath test results.

Because we must look to the facts and the record to resolve the DMV's challenge raised for the first time on appeal, its claim is forfeited. We nonetheless choose to reach the merits of its contention.

### 2. Merits

The DMV cites *Coffey*, *supra*, 60 Cal.4th 1198 to support its view that the chemical breath test results should be considered in conjunction with the PAS test results and behavioral evidence notwithstanding a title 17 violation. In *Coffey*, the plaintiff was pulled over for swerving erratically on the road. (*Id*. at p. 1203.) She performed poorly on field sobriety tests and was placed under arrest. (*Id*. at p. 1205.) Fifty-six minutes after the plaintiff was stopped, she took a breath test which showed a BAC of 0.08 percent. A second breath test showed a BAC of 0.09 percent three minutes later. Her blood sample taken about 20 minutes later tested at 0.095 or 0.096 percent. (*Ibid*.)

17.

At the administrative hearing, the plaintiff obtained an expert who testified that her results suggested the alcohol level in her body was rising at the time of the tests and, given the totality of the circumstances, were consistent with the plaintiff's BAC being below 0.08 percent at the time she was first pulled over. (*Ibid*.)

Our Supreme Court held the plaintiff's expert testimony rebutted the presumption that the test results showed she was driving with a BAC of 0.08 percent or more. (*Coffey*, *supra*, 60 Cal.4th at p. 1211.) This shifted the burden back to the DMV. The DMV hearing officer was still able to consider the chemical test results, and in conjunction with other evidence, concluded that her BAC was above 0.08 percent while she was driving. (*Id*. at pp. 1211–1217.)

The Supreme Court considered whether the DMV hearing officer properly admitted and considered the nonchemical test evidence, i.e., other circumstantial evidence such as the plaintiff's poor performance on field sobriety tests, to reach its conclusion that the plaintiff was driving with at least a 0.08 percent or more BAC. (*Id*. at p. 1211.) The court concluded that substantial evidence supported the trial court's ruling in favor of the DMV, holding that the court acted well within its discretion in rejecting the expert's testimony and placing primary emphasis on the four chemical tests that showed the plaintiff's BAC met or exceeded the statutory threshold at the time she was driving. (*Id*. at pp. 1217–1218.) Significantly, the plaintiff's expert in *Coffey* did not testify the chemical tests inaccurately measured her BAC at the time the tests were run. (*Id*. at p. 1217.)

Our case is distinguishable in two ways. In *Coffey*, the expert only stated that the results were consistent with plaintiff's BAC being lower than 0.08 percent while she was driving. There was no evidence presented that the testing itself was invalid or raised a question of inaccuracy by not following official standards. (*Coffey*, *supra*, 60 Cal.4th at p. 1205.) Here, there is uncontroverted evidence that Myers was left alone in the patrol car during the 15-minute period of continuous observation in violation of title 17.

Moreover, the DMV failed to offer any evidence—by way of officer testimony or otherwise—showing that the tests were reliable despite the videos.  The record reflects the only evidence the DMV presented was the signed DS 367 form.  The DMV was required to prove Myers's BAC at the time he was driving was above 0.08 percent without resort to the statutory presumption, after Myers rebutted it.  (See *Coffey*, *supra*, 60 Cal.4th at p. 1211.)  The DMV  failed to do so.

Finally, the DMV argues that the circumstantial evidence established that Myers's evidentiary breath test results were reliable, and we should reverse on this basis.  The DMV's argument again fails in two respects.  Under a deferential standard of review, we resolve all evidentiary conflicts and draw all reasonable inferences in favor of the trial court's decision.  (*Freitas*, *supra*, 3 Cal.App.5th at p. 300.)  While circumstantial evidence may have been relevant in showing the tests were reliable, the record shows the court considered all relevant factors and found the weight of the evidence favored Myers.  The DMV called no witnesses, introduced no additional evidence, and made no arguments regarding the reliability of the chemical breath test despite the deviation.  With nothing to fill the evidentiary gap, the DMV failed to meet its burden to show the procedures were properly followed.  The court did not act in "an arbitrary, capricious or patently absurd manner" in finding the chemical breath test results inadmissible.  (*People v. Jones* (2013) 57 Cal.4th 899, 947.)

We also point out that the concurring opinion by Justice Liu in *Coffey* found circumstantial evidence alone "do[es] not generally establish that it is more likely a driver's BAC is 0.08 percent ….  [S]igns of impairment do not generally have a tendency in reason to prove a BAC of 0.08 percent or greater."  (*Coffey*, *supra*, 60 Cal.4th at p. 1218.)  Similarly, in *Komizu v. Gourley* (2002) 103 Cal. App. 4th 1001, while the trial court found the DMV did not err when it relied on an alcohol analysis report in conjunction with other circumstantial evidence in finding the motorist's BAC above 0.08 percent, the circumstantial evidence was in addition to, not instead of, a valid

chemical test. (*Komizu*, at pp. 1007–1008, fn. 7.) Without a reliable chemical breath test, there was nothing in this case for the circumstantial evidence to support.

We note the DMV correctly points out that the evidence relating to the PAS test shows the test was properly administered for purposes of establishing its admissibility into evidence. But admissibility into evidence is a different issue than the reliability of the chemical breath test results under title 17. (*People v. Williams* (2002) 28 Cal.4th 408, 417.)

### F.    Conclusion

In sum, the trial court's finding was supported by substantial evidence showing Myers rebutted the presumption that the chemical breath test results were reliable. Because the video evidence showed Goodrich failed to continuously observe Myers for 15 continuous minutes to ensure he had not ingested food or drink, smoked, or regurgitated before administering the first chemical breath test, and the DMV offered no further evidence indicating that the results were reliable despite noncompliance with title 17, the trial court properly granted Myers's petition for a writ of mandate.

### DISPOSITION

The trial court's order is affirmed. Costs on appeal are awarded to Myers.

HARRELL, J.

WE CONCUR:

HILL, P. J.

MEEHAN, J.

20.

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JAMES WILLIAM MYERS, Plaintiff and Respondent, v. DEPARTMENT OF MOTOR VEHICLES et al., Defendants and Appellants. | F089241 (Kern Super. Ct. No. BCV-24-100651) **ORDER GRANTING REQUEST FOR PUBLICATION** |

As the nonpublished opinion filed on April 20, 2026, in the above entitled matter hereby meets the standards for publication specified in California Rules of Court, rule 8.1105(c), it is ordered that the opinion be certified for publication in the Official Reports.

HARRELL, J.

WE CONCUR:


HILL, P. J.


MEEHAN, J.